Case No. 22-6177

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Garfield William Holley,
Appellant

v.

Mr. J. Combs, et al.,
Appellees

On Appeal from the United States District Court
for the Western District of Virginia
The Honorable Elizabeth K. Dillon, Chief District Judge

**Appellant's Opening Brief**

Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

# Table of Contents

Table of Authorities ................................................................................. ii

Jurisdictional Statement ............................................................................iv

Statement of the Issue ............................................................................... 1

Statement of the Case ............................................................................... 1

Standard of Review.................................................................................... 6

Summary of the Argument........................................................................ 7

Argument.................................................................................................. 10

    I.    Mr. Holley pled two ongoing physical injuries that satisfy the "imminent danger of serious physical injury" requirement in 28 U.S.C. § 1915(g)........................................................................ 12

        A. Mr. Holley pled ongoing physical injury related to the worsening of his chronic asthma .......................................................... 13

        B. Mr. Holley pled ongoing physical injury related to being handcuffed while unconscious in the nurses' station for over forty-eight hours, which permanently disfigured his hands and wrists ........ 19

    II.    Mr. Holley also pled a pattern of misconduct that satisfies the "imminent danger of serious physical injury" requirement in 28 U.S.C. § 1915(g)........................................................................ 23

Conclusion ............................................................................................... 27

Request for Oral Argument ..................................................................... 27

Certificate of Compliance

Certificate of Service

# Table of Authorities

**Cases**

*Andrews v. Cervantes,*
    493 F.3d 1047 (9th Cir. 2007) ........................................................ 23

*Bazemore v. Best Buy,*
    957 F.3d 195 (4th Cir. 2020) ........................................................... 6

*Fletcher v. Menard Corr. Ctr.,*
    623 F.3d 1171 (7th Cir. 2010) ................................................... 21–22

*Garrett v. Elko,*
    No. 95–7939, 1997 WL 457667 (4th Cir. Aug. 12, 1997) ........................... 13

*Gordon v. Leeke,*
    574 F.2d 1147 (4th Cir. 1978) ................................................... 12–13

*Gresham v. Meden,*
    938 F.3d 847 (6th Cir. 2019) ............................................... 14, 18, 21

*Hall v. United States,*
    44 F.4th 222 (4th Cir. 2022) .............................. 6, 11, 13–16, 18, 21–23, 27

*Ibrahim v. District of Columbia,*
    463 F.3d 3 (D.C. Cir. 2006) ..................................................... 15–16

*Johnson v. Warner,*
    200 F. App'x 270 (4th Cir. 2006) ........................................ 11, 23–24, 27

*Martin v. Shelton,*
    319 F.3d 1048 (8th Cir. 2003) ...................................................... 24

*Newkirk v. Kiser,*
    812 F. App'x 159 (4th Cir. 2020) ......................................... 6, 23–24, 27

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,*
    148 F.3d 396 (4th Cir. 1998) .......................................................... 6

*Smith v. Ray,*
    590 F. App'x 232 (4th Cir. 2015) .......................................... 15–16

*Vandiver v. Prison Health Servs., Inc.,*
    727 F.3d 580 (6th Cir. 2013) ................................................. 13–16

**Constitutional Provisions, Statutes, and Rules**

28 U.S.C. § 1915(g) .................................................. 1, 5, 7, 11–14, 18, 23

Model Penal Code § 210.0 ................................................... 18, 22

**Secondary Authorities**

Cleveland Clinic, *Asthma* (Jan. 2022)
https://my.clevelandclinic.org/health/
diseases/6424-asthma ............................................................ 18–19

Mayo Clinic, *Asthma* (Apr. 2024)
https://www.mayoclinic.org/diseases-
conditions/asthma/symptoms-
causes/syc-20369653 ..................................................................... 19

## Jurisdictional Statement

On September 10, 2020, Garfield Holley filed a Section 1983 complaint in the United States District Court for the Western District of Virginia. (JA 7). The district court had subject matter jurisdiction under 28 U.S.C. § 1331. It dismissed the case without prejudice on September 20, 2021. (JA 50). Mr. Holley timely appealed, but the case was placed in abeyance pending a decision in *Hall v. United States*, 44 F.4th 218, 218 (4th Cir. 2022). This Court has jurisdiction to hear the appeal under 28 U.S.C. § 1291.

## Statement of the Issue

After delaying Mr. Holley's oral surgery appointment for several months, prison officials drove him to the appointment—three hours away—in a "makeshift enlarged, enclosed dog cage" in the back of a pickup truck. It was thirty-five degrees outside; the cage was filled with dust and exhaust; and, because of his restraints, Mr. Holley was unable to access the rescue inhaler he uses for his chronic asthma. As a result, he contracted pneumonia, lost consciousness for over forty-eight hours, and, while unconscious, was left in tight, metal handcuffs, injuring his hands and wrists. Because of that, Mr. Holley sued the Assistant Warden of Operations and four correctional officers. But the district court dismissed his case under the three-strikes rule in 28 U.S.C. § 1915(g), finding that Mr. Holley had not alleged that he was in imminent danger of serious physical injury at the time he filed his complaint. His appeal raises one question: whether his allegations satisfy § 1915(g)'s "imminent danger of serious physical injury" requirement.

## Statement of the Case

**Nature of the case.** Mr. Holley is a former inmate at Wallens Ridge State Prison ("WRSP") who filed a *pro se* Section 1983 complaint in the United States District Court for the Western District of Virginia in September 2020. (JA 7, JA 23, JA 32) (naming as defendants Assistant Warden Combs and Officers Edwards, Wynn,

Lawson, and Muncy). The complaint raised Eighth Amendment claims surrounding delayed medical care and mistreatment stemming mainly from two incidents in October and November 2018. (JA 8–10, JA 23–28, JA 32–37).

**Mr. Holley's transportation to oral surgery.** On October 31, 2018, after a four-month delay, Mr. Holley had an oral surgery appointment in Marion, Virginia, which is 160 miles away from WRSP. (JA 8, JA 25–26, JA 34–35). Even though he was 65 years old at the time and "chronic[ally] asthmatic," Assistant Warden Combs arranged for him to be transported there in a "makeshift enlarged, enclosed dog cage" in the bed of a state-owned pickup truck. (JA 8, JA 25, JA 34). It was thirty-five degrees outside, and Mr. Holley was wearing a "thin orange two-piece top and bottom," along with handcuffs, waist chains, leg irons, and an electric shock waist harness. (JA 8, JA 24, JA 33).

Officers Wynn and Muncy locked Mr. Holley into the cage, attaching his handcuffs to the metal waist chain so tightly that he could not reach his emergency asthma rescue inhaler. (JA 8, JA 25–26, JA 34–35). He remained in the cage for six hours that day with no heat, seatbelt, ventilation, water breaks, bathroom breaks, breakfast, or lunch—all while breathing in fumes from the vehicle's exhaust and the "dust" from the red clay that covered the cage's floor. (JA 8, JA 25–26, JA 34–35). He alleged in his complaint that this "racist, bestial mistreatment" had "no legitimate

security or penological justification," and was carried out to injure and punish him for filing a grievance regarding the appointment's extended delay. (JA 8, JA 26, JA 35).

**Mr. Holley contracts pneumonia.** Within a week of his transport, Mr. Holley placed a sick call to report, among other things, night-time nose bleeds. (JA 9, JA 26, JA 35). The sick call nurse dismissed the nose bleeds as "normal" in light of his oral surgery a few days prior. (JA 9, JA 26, JA 35) ("Sick-call Nurse C. Mullins stated, 'If you have recently had your tooth pulled, then your nose bleed is normal.'").

About three weeks after that, Mr. Holley began experiencing acute shortness of breath, so he visited the nurses' station for emergency breathing treatment. (JA 9, JA 26, JA 35). After receiving it, a nurse "commanded" him to refuse medical housing, promising that WRSP's institutional physician would come to his cell two days later, on Monday, November 26. (JA 9, JA 26–27, JA 35–36) (explaining that he was returned to his cell). But the physician did not arrive until Tuesday, and by then Mr. Holley was found lying on the floor, "wheezing." (JA 9, JA 27, JA 36).

At that time, Officer Edwards placed Mr. Holley in tight, metal handcuffs and wheelchaired him to the WRSP nurses' station, where, after witnessing his bronchospasms, a nurse diagnosed him with pneumonia. (JA 9, JA 27–28, JA 36–37). Soon after, he fell unconscious. (JA 9–10, JA 27, JA 36). He remained handcuffed while unconscious for over forty-eight hours, regaining consciousness for brief periods

only because of the "terrible pains" stemming from his hands and wrists. (JA 9–10, JA 27–28, JA 36–37). During those brief periods, he noticed an officer lift his blanket to ensure that the cuffs remained in place. (JA 28, JA 37). He also overheard an officer laugh and state "There lays old Holley, always writing up shit, bitching about no coffee and no juice; good riddance; Holley dying cuffed-up non-stop your black-ass to Hell." (JA 10, JA 28, JA 37).

**Mr. Holley's pleadings.** Mr. Holley's *pro se* complaint raises claims against the Assistant Warden and Officers Edwards, Wynn, Lawson, and Muncy for alleged violations of the Eighth Amendment's protection against cruel and unusual punishment. (JA 7, JA 10, JA 23–24, JA 28, JA 32–33, JA 37). Specifically, Mr. Holley claims that he experienced "ongoing deterirative [sic] effects of pneumonia" as a result of being transported in the back of the truck and not being timely treated for pneumonia. (JA 86); *see also* (JA 24, JA 32) (stating that he is "permanently-physically-injured" as a result of defendants' actions). He also claims that the handcuffs placed on him by Officer Edwards carved wounds in his hands and wrists that were a half-inch deep and thirteen inches long. (JA 9, JA 27–28, JA 36). This caused his hands to swell to three times their normal size and left him with permanent scarring, disfigurement, ongoing hand and wrist pain, and loss of hand strength. (JA 9, JA 27–28, JA 36, JA 60, JA 65); *see also* (JA 71) (alleging that his "hand pains and numbness

[are] ongoing"). To remedy those injuries and regain the ability to use his hands, he alleges that he needs treatment from a nerve specialist and physical therapy. (JA 12).

**The district court's dismissal.** Soon after his complaint, all five defendants filed a partial answer and a motion to dismiss. (JA 41, JA 46). In the motion to dismiss, they noted that the district court had dismissed at least three of Mr. Holley's previous complaints on grounds that "they were frivolous, malicious, or failed to state a claim for relief." (JA 48 n.1). The district court had already granted Mr. Holley leave to proceed *in forma pauperis*, but, upon review, the district court agreed with the defendants and noted that Mr. Holley could not proceed unless he either (1) prepaid the filing fee, or (2) demonstrated that he was under "imminent danger of serious physical injury." (JA 75–76) (citing 28 U.S.C. § 1915(g)). Finding that his allegations fell short of the latter, and that he had failed to prepay the filing fee, it vacated its previous order granting *in forma pauperis* status. (JA 76–77). It then dismissed the action without prejudice under 28 U.S.C. § 1915(g), giving Mr. Holley twenty days to pay the full filing fee to reinstate the case. (JA 77). As a result, it denied the defendants' pending motion to dismiss as moot, and closed the case. (JA 77).

Mr. Holley subsequently filed an Emergency Motion to Alter the Judgment, which the district court denied for failure to show clear error of law. (JA 78, JA 89). Mr. Holley then timely appealed. (JA 90).

## Standard of Review

A district court's conclusion that a plaintiff was not under imminent danger of serious physical injury is ordinarily reviewed *de novo*. *See Hall v. United States*, 44 F.4th 218, 222 (4th Cir. 2022) ("We . . . review de novo a district court's conclusion that a three-strikes litigant has not adequately alleged that he or she is in imminent danger of serious physical injury."). Meanwhile, a district court's decision on a motion to amend or alter judgment under Rule 59(e) is ordinarily reviewed for abuse of discretion. *See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 402–03 (4th Cir. 1998). While Mr. Holley's Notice of Appeal cited his Motion to Alter the Judgment, he was appealing the district court's order vacating its previous grant of *in forma pauperis* status. (JA 90). This intention is evident in the Motion to Alter the Judgment, in which Mr. Holley focused on the ongoing injuries caused by the defendants and his "daily fight to stay alive." (JA 80). Because this Court has stated that "pro se pleadings must be liberally construed," Mr. Holley's Notice of Appeal should be construed as an appeal of the district court's denial of his *in forma pauperis* status. *Newkirk v. Kiser*, 812 F. App'x 159, 160 (4th Cir. 2020) (citing *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)). Thus, the district court's holding that Mr. Holley is not under imminent risk of serious injury should be reviewed *de novo*.

## Summary of the Argument

The district court dismissed Mr. Holley's complaint under the three-strikes provision of 28 U.S.C. § 1915(g) after finding that he did not allege "imminent danger of serious physical injury." This Court should reverse for two reasons. First, Mr. Holley pled two ongoing physical injuries that placed him under imminent danger of serious physical injury at the time of his complaint. Second, Mr. Holley pled a "pattern of misconduct" by WRSP officials.

**Ongoing physical injuries.** The district court held that Mr. Holley did not plead imminent danger of serious physical injury because he focused on incidents that occurred in 2018, approximately two years before he filed his complaint. However, the pleadings allege two ongoing harms stemming from those incidents—namely, the worsening of Mr. Holley's chronic asthma and ongoing complications from the hand and wrist wounds suffered at the WRSP nurses' station.

First, Mr. Holley alleges ongoing injury by describing his worsening chronic asthma, decreasing lung capacity, and inadequate treatment for those conditions, putting him at risk of severe bodily harm. For example, he alleges that after being driven in a cage for six hours in the cold, he experienced multiple delays in medical care that caused his chronic asthma to worsen, threatening his life. That included complaints to the sick call nurse that were dismissed, an order to refuse medical

housing, and a physician's delay in providing emergency treatment, all of which resulted in Mr. Holley's multi-day loss of consciousness and pneumonia diagnosis that caused long-term damage to his lungs. He even pointed to multiple occasions after that—throughout 2019 and 2020—where, even though he continued to suffer ongoing breathing problems, his "Regular Grievances" for treatment were repeatedly denied or ignored. These allegations are enough to show a delay in medical care for a chronic, life-threatening condition, which created a risk of severe bodily harm.

Second, Mr. Holley also pled ongoing serious injury to his hands and wrists. The district court did not address whether these hand and wrist injuries could trigger the imminent danger exception to the three-strikes rule, but it should have. In particular, after suffering hand and wrist lacerations at the WRSP nurses' station, Mr. Holley alleges that he repeatedly sought help for his ongoing pain, tingling, and numbness, claiming that he needed help from a nerve specialist and physical therapist to regain functionality. WRSP failed to provide proper care, causing the injuries to persist. And these hand and wrist injuries qualify as "serious physical injury" because he is left with numbness, pain, and impaired functionality stemming from the permanent disfigurement. Given these allegations, his complaint should not have been dismissed under the three-strikes rule.

**Pattern of misconduct.** Another reason the district court should not have dismissed Mr. Holley's complaint is that he pled a "pattern of misconduct" evidencing a likelihood of imminent serious physical injury. Specifically, Mr. Holley describes three examples of wrongdoing by WRSP officials.

First, according to Mr. Holley's pleadings, prison officials transported him in a cage in the back of a truck for six hours with no heat, seatbelt, ventilation, water breaks, bathroom breaks, food, or access to his rescue inhaler—all while he breathed in fumes from the vehicle's exhaust and dust from the cage's floor. This resulted in Mr. Holley contracting pneumonia and suffering severe respiratory problems.

Second, when Mr. Holley was unconscious at the WRSP nurses' station, prison officials left him tightly handcuffed for over forty-eight hours, leaving him with thirteen-inch gashes, scars, permanent disfigurement, numbness, pain, and impaired use of his hands.

Third, Mr. Holley alleges that WRSP officials regularly use excessive force, refuse medical treatment, and mistreat inmates. In particular, he provides records showing that officers severely beat and verbally abuse inmates, refuse inmates' requests for medical attention, and improperly classify inmates with mental illness. In fact, he alleges that this mistreatment has been ongoing for nearly a quarter century. As a result, Mr. Holley alleges that he lives in reasonable fear of future harm because of the

officers' repeated abuses. These allegations suffice to trigger the "imminent danger" exception to the three-strikes rule, making dismissal improper.

## Argument

Four months after 65-year-old Garfield Holley requested oral surgery, Assistant Warden Combs instructed Officers Wynn, Edwards, Lawson, and Muncy to transport him to his appointment—160 miles away—in a "makeshift enlarged, enclosed dog cage" in the bed of a pickup truck in 35-degree weather with no jacket, hat, gloves, ventilation, water breaks, bathroom breaks, food, or access to the emergency inhaler used to treat his chronic asthma. (JA 8, JA 24–26, JA 34–35) (explaining that this was punishment for filing a grievance about the delayed appointment). Within a week, Mr. Holley complained of night-time nose bleeds, which prison staff dismissed as "normal" before returning him to his cell. (JA 9, JA 26, JA 35). Soon after, he was found lying on his cell floor, "wheezing." (JA 27, JA 36). He was having severe bronchospasms—the result of pneumonia—and he lost consciousness at the WRSP nurses' station for over forty-eight hours. (JA 27, JA 36). Even so, Officer Edwards placed Mr. Holley in overly tight metal handcuffs while he was unconscious, with other officers regularly checking them and sometimes laughing at him when he woke up. (JA 9–10, JA 28, JA 36–37).

Based on these events, Mr. Holley filed a Section 1983 complaint in the United States District Court for the Western District of Virginia, alleging that this mistreatment left him with worsening chronic asthma, decreased lung capacity, permanent disfigurement of his hands and wrists, ongoing hand and wrist pain, tingling, loss of hand strength, and scarring caused by the thirteen-inch wounds the handcuffs carved into his skin. (JA 7, JA 9, JA 12, JA 27–28, JA 36–37, JA 60, JA 65, JA 81–83, JA 86). However, on three or more prior occasions, Mr. Holley had complaints dismissed for being frivolous or for failing to state a claim. (JA 48). So, for his Section 1983 claim to proceed, the district court found that he had to either prepay the filing fee or demonstrate that he was "under imminent danger of serious physical injury" at the time of filing his complaint. 28 U.S.C. § 1915(g).

To do the latter, Mr. Holley had to allege specific facts showing either (1) ongoing serious physical injury, or (2) a pattern of misconduct evidencing the likelihood of imminent serious physical injury. *Hall v. United States*, 44 F.4th 218, 224 (4th Cir. 2022) (citing *Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006)). The district court found that Mr. Holley's complaint failed to meet this standard. (JA 76). Because of that, and because Mr. Holley did not prepay the filing fee, it dismissed his case without prejudice. (JA 76–77).

This Court should reverse for two reasons. First, Mr. Holley sufficiently alleged ongoing serious injury, including the worsening of his chronic asthma and the ongoing disfigurement of his hands and wrists. Second, Mr. Holley also sufficiently alleged a pattern of misconduct by WRSP officials that created an imminent risk of serious physical injury. Because either allegation satisfies the "imminent danger of serious physical injury" requirement of 28 U.S.C. § 1915(g), the district court erred in dismissing this action, and this Court should reverse.

## I. Mr. Holley pled two ongoing physical injuries that satisfy the "imminent danger of serious physical injury" requirement in 28 U.S.C. § 1915(g).

The district court held that Mr. Holley's allegations fell short of "imminent danger of serious physical injury" because they surrounded incidents in October and November 2018, while he filed his complaint in 2020. (JA 76). But Mr. Holley's pleadings allege ongoing harms that resulted from those past incidents—namely, worsening chronic asthma, lung damage, not receiving necessary breathing treatments in a timely manner, and permanent disfigurement and scarring of his hands and wrists that require physical therapy and treatment from nerve specialists to regain full functionality. (JA 9-10, JA 27-28, JA 36-37, JA 81-83, JA 86).[1] Given these allegations, this Court should reverse the dismissal of Mr. Holley's Section 1983 claim.

---

[1] To determine whether a *pro se* plaintiff's claim can withstand a motion to dismiss, courts consider all of the relevant pleadings. *See Gordon v. Leeke*, 574 F.2d 1147, 1149–

**A. Mr. Holley pled ongoing physical injury related to the worsening of his chronic asthma.**

Mr. Holley's worsening chronic asthma and decreasing lung capacity—and the lack of timely treatment for those conditions—put him at risk of severe bodily harm, which is sufficient to trigger the imminent danger exception to § 1915(g)'s three-strikes rule. In particular, in the context of chronic conditions like this, an incarcerated person may invoke the exception if they allege two conditions: (1) they are "continually denied necessary medical care which has worsened their chronic conditions," and, (2) "as a result, they are experiencing serious physical injuries, or severe bodily harm." *Hall*, 44 F.4th at 227; *see also Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013) (same).

In *Hall*, for example, the petitioner suffered from a myriad of chronic conditions, including chronic asthma, COPD, a possibly cancerous lung module, right knee meniscus tears, a need for lumbar surgery, and heart problems requiring access to outside services not available at the facility where he was incarcerated. *Hall*, 44 F.4th at 227–28. He alleged that he had an initial medical visit but no additional

---

51 (4th Cir. 1978) (looking to plaintiff's complaint, defendant's supplemental answers, plaintiff's verified responses, and affidavits before determining whether plaintiff alleged a cause of action against defendants); *Garrett v. Elko*, No. 95–7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997) (citing *Gordon*, 574 F.2d at 1149–51) (looking to plaintiff's complaint, a response to the motion to dismiss, a motion for summary judgment, an affidavit, and copies of grievances plaintiff had filed with the prison "to piece together the alleged facts underlying [plaintiff]'s claim").

appointments, explaining that appointments were repeatedly canceled for years, leading to an effective denial of medical care. *Id.* at 228. Even so, the district court dismissed his case by relying on § 1915(g)'s three-strikes rule, finding that he was not in imminent danger of serious physical harm at the time he filed his complaint. *Id.* at 222. On appeal, though, this Court vacated the decision and remanded. *Id.* at 220. In particular, it acknowledged Mr. Hall's allegations "that the Government has failed to provide the requisite standard of care to treat him for chronic asthma and COPD, associated with a reduction in lung capacity, along with a material delay in providing care enabling him to have lumbar surgery, resulting in a continuation of these injuries and increasing the risk of imminent danger of serious physical injury." *Id.* at 228. Then the Court concluded that his allegations were sufficient to remand his case to the district court with instructions to reconsider whether he pled a risk of "serious physical harm" in light of the whole record. *Hall*, 44 F.4th at 227–29 (explaining that the district court did not have access to his medical records when dismissing his complaint and that "[a] physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm" (quoting *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019)).

Similarly, in *Vandiver*, the plaintiff alleged that he had diabetes and Hepatitis C and that he had already undergone partial amputations of his feet and been denied

physician-prescribed shoes, a transport vehicle, and a special diet and medication—all creating a risk of "coma, death, physical loss of limbs and mental pain, mental anguish and emotional distress." *Id.* at 582, 587. Still, the district court rejected his application to proceed *in forma pauperis*, stating that his allegations fell short of the imminent danger exception to the three-strikes rule. *Id.* at 582–83. On appeal, the Sixth Circuit reversed, holding that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g), as incremental harm that culminates in a serious physical injury may present a danger equal to harm that results from an injury that occurs all at once." *Id.* at 587; *see also Hall*, 44 F.4th at 229 (relying on *Vandiver* to make this same point). The court concluded that the prison was withholding necessary medical treatment for the plaintiff, and the resulting risk of amputations, coma, or death was a sufficient injury to trigger the imminent danger exception. *Vandiver*, 727 F.3d at 589; *see also Smith v. Ray*, 590 F. App'x 232, 232 (4th Cir. 2015) (finding imminent danger where plaintiff was effectively denied treatment—despite his complaints—for chest pains, heart palpitations, and coughing up blood); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (reversing a district court's denial of IFP status to plaintiff where defendants "failed and refused to treat him with possible eradication treatment for

his Hepatitis C," placing him at risk of "additional harm, if not death") (internal quotation marks and alterations omitted).

Here, like in *Hall*, *Vandiver*, *Smith*, and *Ibrahim*, Mr. Holley alleged (1) that he experienced multiple delays in medical care and (2) that the delays exacerbated his chronic asthma and caused him serious injury, threatening his life. First, regarding the treatment delays, Mr. Holley alleged that WRSP staff were dismissive of his health problems in the weeks following his oral surgery, leading to pneumonia and a worsening of his chronic asthma. More specifically, Mr. Holley notified WRSP of complications following his oral surgery by contacting the sick-call nurse on November 4, 2018. (JA 9, JA 26, JA 28). Yet, when he described his night-time nose bleeds, this was dismissed as "normal," and he was returned to his cell without further treatment. (JA 9, JA 26, JA 35) (stating that the sick-call nurse said "If you have recently had your tooth pulled, then your nose bleed is normal."). After going untreated for almost three weeks, Mr. Holley's health problems escalated, and he began experiencing "acute shortness of breath" and "distressful breathing." (JA 9, JA 26, JA 35). So, on November 24, he walked to the nurses' station. (JA 9, JA 26, JA 35). He received an emergency breathing treatment at that time, but he alleges that the nurse ordered him to sign a form refusing medical housing before sending him back to his cell, promising that a doctor would visit him on Monday, November 26. (JA 26, JA 35).

After that, he alleges that the physician failed to show up to his cell until Tuesday, November 27. (JA 9, JA 27, JA 36). By that time, Mr. Holley was lying on his back on the floor of his cell experiencing "life-threatening breathing" and "asthmatic wheezing" associated with the worsening of his chronic condition. (JA 9, JA 27, JA 36) (explaining that he was having severe bronchospasms). This resulted in a multi-day hospitalization, unconsciousness, and pneumonia diagnosis. (JA 7, JA 27, JA 36).

Following those events, Mr. Holley alleges that the pneumonia hospitalization caused long-term damage to his lungs, stating that he since has suffered "suffocating" and "wheezing." (JA 81–82, JA 86). He also alleges that he filed "Regular Grievances" on multiple occasions throughout 2019 and 2020 to seek help for these symptoms—grievances that he alleges were repeatedly denied or ignored. (JA 81–83). For example, in December 2019, Mr. Holley filed a grievance stating that he awoke suffering "acute shortness of breath," a "wracking cough every 12-14 minutes," and severe nervousness and paranoia. (JA 39, JA 81). That grievance was denied. (JA 82). Also, in December 2020, which was after he filed his initial complaint with the district court, he alleges that he was still waking up in the middle of the night, wheezing and struggling to breathe, yet his resulting report of inadequate medical care was denied, too. (JA 82). Then he alleges that, on one occasion, he filed an informal report detailing a life-threatening breathing issue indicating serious medical need, yet WRSP ignored his

request for eight days before responding. (JA 83). In sum, Mr. Holley alleges that WRSP's ongoing failure to adequately treat him led to a worsening of his chronic asthma and ongoing breathing problems. Those allegations satisfy the delay-in-medical-care-for-a-chronic-condition requirement found in *Hall*, 44 F.4th at 227.

Second, regarding *Hall*'s serious-physical-injury requirement, Mr. Holley alleges that his worsening chronic asthma created a risk of severe bodily harm within the meaning of 28 U.S.C. § 1915(g). Specifically, he states throughout the record that his condition became "life-threatening" because the ongoing wheezing and inability to properly breathe made him feel like he was "suffocating." *See, e.g.*, (JA 27, JA 36, JA 80). He also alleges that, following his pneumonia hospitalization, it became a "daily fight to stay alive." (JA 80). And he claims that the pneumonia and lack of adequate treatment decreased his lung capacity. (JA 81–82, JA 86). Those allegations satisfy the "serious bodily injury" pleading requirement. *See Hall*, 44 F.4th at 229 (finding Mr. Hall's similar allegations sufficient to satisfy the pleading hurdle for serious physical injury and remanding for the lower court to confirm serious injury based on the whole record); *see also Gresham*, 938 F.3d at 849–50 (defining "serious bodily injury" to include "permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ") (quoting Model Penal Code § 210.0); Cleveland Clinic, *Asthma* (Jan. 2022) https://my.clevelandclinic.org/health/diseases/6424-

asthma ("Asthma can be life-threatening if you don't get treatment."); Mayo Clinic, *Asthma* (Apr. 2024) https://www.mayoclinic.org/diseases-conditions/asthma/symptoms-causes/syc-20369653 (stating that "severe asthma attacks can be life-threatening" and listing "rapid worsening of shortness of breath or wheezing" as signaling an asthma emergency).

At bottom, because WRSP prison staff already let Mr. Holley's condition progress to the point of a near-death pneumonia hospitalization, and he continued to suffer serious complications as a result, his allegations suffice to trigger the exception and allow this claim to proceed. Put differently, the delayed or denied medical treatment worsened Mr. Holley's chronic asthma, resulting in lung damage and breathing problems that placed him under imminent danger of serious physical injury at the time he filed his complaint. For that reason, this Court should reverse the district court's dismissal of his claim. *See Hall*, 44 F.4th at 227 ("[D]elayed or denied medical treatment that worsens a petitioner's medical conditions resulting in serious physical injuries would be sufficient to trigger the exception.").

**B. Mr. Holley pled ongoing physical injury related to being handcuffed while unconscious in the nurses' station for over forty-eight hours, which permanently disfigured his hands and wrists.**

Mr. Holley also pled ongoing serious injury stemming from the hand and wrist lacerations inflicted at the nurses' station. After WRSP staff placed Mr. Holley in tight

steel handcuffs for multiple days while he was unconscious, he was left with "1/2-inch-deep wounds" and thirteen-inch-long gashes in his hands and wrists, leading them to swell up to "three times their normal size" and causing ongoing complications. (JA 9, JA 12, JA 27–28, JA 36–37, JA 60, JA 65). The district court did not address the possibility that the resulting permanent disfigurement, pain, numbness, and loss of hand function could trigger the imminent danger exception to the three-strike rule. *See* (JA 75–77). It should have for two reasons.

First, Mr. Holley sufficiently alleged that he has received inadequate medical care for the pain stemming from his hand and wrist wounds, even though he repeatedly sought help for it. (JA 29, JA 39, 81–82). For example, in the weeks following the injury, Mr. Holley alleges that he saw a doctor for the wounds, yet no bandages or gauze were applied, and he only received pain medication for a brief period, leaving him with ongoing numbness and pain. (JA 71). Then, in July 2019, he reported hand pain to the sick call nurse, but nothing happened. (JA 81). After that, in December 2019, Mr. Holley reported that this had progressed to "electric wrist pains." (JA 39, JA 81). Once again, though, he alleges that he received no care beyond a visit from the prison doctor. (JA 12, JA 81–83) (alleging that the injuries necessitate treatment from a nerve specialist and physical therapist). Finally, in January 2021, Mr. Holley stated that the pain was affecting his sleep—that he was unable to sleep past

2:00 a.m. due to "throbbing," "fiery" and "electric" pain, and "tingling" stemming from both hands and wrists. (JA 60). Thus, due to WRSP's failure to provide proper care, Mr. Holley's injuries persist. *See Hall*, 44 F.4th at 227 (holding that denied or delayed medical care which worsens a condition can be sufficient to trigger the exception); *see also Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) ("[A]n untreated wound, like an untreated acute illness, could pose an imminent danger of serious physical harm.").

Second, the hand and wrist injuries constitute "serious physical injury," which is sufficient to allow Mr. Holley's claim to proceed under the imminent danger exception to the three-strikes rule. In particular, these injuries are neither minor nor fleeting, but rather serious and permanent. *See Gresham*, 938 F.3d at 850 (holding that "[m]inor harms or fleeting discomfort don't count" to trigger the exception). Mr. Holley alleges, for example that he has lasting, "permanent" injuries stemming from this harm: he is left with scarring, numbness, tingling, electric pain, and ongoing loss of use associated with the wounds. (JA 9, JA 27–29, JA 36, JA 39, JA 81–82). In fact, Mr. Holley's allegations of "permanent disfigurement" caused by the metal cuffs mirror the exact language in the Model Penal Code definition cited in *Gresham*. (JA 9, JA 27–28, JA 36); *Gresham*, 938 F.3d at 849–50 ("The Model Penal Code likewise has long defined 'serious bodily injury' as that which 'creates a substantial risk of death

or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.'") (quoting Model Penal Code § 210.0). Because of this, allowing this action to proceed would not constitute a "remedy for past misconduct" as claimed by the district court, but would rather properly recognize how the WRSP staff's failure to properly treat Mr. Holley's ongoing hand and wrist injuries placed him under imminent danger at the time he filed his complaint. (JA 76); *see also Hall*, 44 F.4th at 227 ("[D]elayed or denied medical treatment that worsens a petitioner's medical conditions resulting in serious physical injuries would be sufficient to trigger the exception."); *Fletcher*, 623 F.3d at 1172–73 (stating that the district court's reasoning for finding no imminent danger of physical injury was "incomplete" because it failed to consider an alleged beating by prison guards that caused plaintiff "severe injury and pain to wrists, arms, feet, neck, shoulders, and back").

In sum, the district court overlooked multiple ongoing injuries that sufficed to place Mr. Holley under imminent danger of serious physical harm. Given that, we respectfully ask this Court to reject the district court's dismissal of Mr. Holley's complaint.

## II. Mr. Holley also pled a pattern of misconduct that satisfies the "imminent danger of serious physical injury" requirement in 28 U.S.C. § 1915(g).

In addition to pleading ongoing serious physical injuries, Mr. Holley also pled a "pattern of misconduct" evidencing a likelihood of imminent serious physical injury, which is another reason the district court should not have dismissed his complaint. *See Hall*, 44 F.4th at 225 ("We have also clarified that if there is a pattern of past conduct that places an incarcerated person in imminent danger of harm, and which is ongoing, then the litigant meets the exception."); *see also Newkirk v. Kiser*, 812 F. App'x 159, 159-60 (4th Cir. 2020) ("[A] prisoner who alleges that prison officials continue with a practice that has injured him or others similarly situated in the past will satisfy the 'ongoing danger' standard and meet the imminence prong of the three-strikes exception." (quoting *Andrews v. Cervantes*, 493 F.3d 1047, 1056-57 (9th Cir. 2007))) (alteration in original); *Johnson v. Warner*, 200 F. App'x 270, 271-72 (4th Cir. 2006) (same).

In *Newkirk*, for example, the plaintiff "described one incident in which he was allegedly subjected to excessive force and asserted that this was not an isolated occurrence." *Newkirk*, 812 F. App'x at 160. The plaintiff also "claimed that prison staff members regularly assault inmates without cause and threaten inmates who complain." *Id.* Together, the prison officials' use of excessive force on the plaintiff and abuse and threats directed at other inmates constituted "a pattern of misconduct

evidencing the likelihood of imminent serious physical injury." *See id.* (quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003)).

Similarly, in *Johnson*, the plaintiff alleged that prison officials threatened him with bodily harm, and he described a number of unprovoked assaults by prison officers. *Johnson*, 200 F. App'x at 271 (explaining that these assaults "resulted in serious injuries including severe cuts, electrocution, and a concussion"). The plaintiff then alleged that he "lives in an atmosphere of constant fear in which he never knows when the next violent assault may occur." *Id.* at 272. Based on those allegations, this Court held that plaintiff had sufficiently alleged that he was in imminent danger of serious physical harm. *Id.*

Like in *Newkirk* and *Johnson*, Mr. Holley alleged a pattern of misconduct by WRSP officials evidencing the likelihood of imminent serious physical injury. Specifically, Mr. Holley detailed three examples of wrongdoing by WRSP officials.

First, Mr. Holley alleged that prison officials transported him in a cage for six hours with no heat, seatbelt, ventilation, water breaks, bathroom breaks, lunch, or access to his rescue inhaler. (JA 8, JA 25–26, JA 34–35). While locked in the cage, he was breathing in the fumes from the vehicle's exhaust and the "dust" from the red clay that covered the cage's floor. (JA 8, JA 25–26, JA 34–35). This resulted in him

contracting pneumonia and suffering severe respiratory issues. (JA 8, JA 26–27, JA 35–36) (alleging that prison officials failed to adequately treat those issues).

Second, Mr. Holley alleged that while he was unconscious for forty-eight hours when he had pneumonia, prison officials left him handcuffed so tightly that it resulted in thirteen-inch gashes on his hands and wrists, permanent scarring, disfigurement, ongoing hand and wrist pain, and loss of hand strength. (JA 9–10, JA 27–28, JA 36); *see also* (JA 12) (alleging that these injuries were so severe that he needs treatment from a nerve specialist and a physical therapist); (JA 10, JA 28, JA 37) (alleging that while he was handcuffed he overheard an officer laugh and state, "There lays old Holley, always writing up shit, bitching about no coffee and no juice; good riddance; Holley dying cuffed-up non-stop your black-ass to Hell.").

Third, Mr. Holley alleged, consistent with the mistreatment described above, that officers at WRSP regularly use excessive force, refuse medical treatment, and mistreat inmates. In response to the defendants' partial answer, for example, Mr. Holley attached records detailing multiple recent instances in which inmates were abused by WRSP officers, including: attacking an inmate upon the inmate's arrival at the prison and refusing to classify the inmate as mentally ill despite multiple diagnoses; severely beating an inmate and immediately afterwards placing the inmate in isolation without medical attention and with limited meals; and verbally abusing an inmate and

giving the inmate the wrong medication—leading the inmate to attempt suicide. (JA 62–63) (quoting one of the inmates as saying, "I'm not the only person that this has happened to. It happens to a lot of people. This place is terrible.").

Mr. Holley also alleged that these recent instances of abuse are part of a long history of misconduct by WRSP officers dating back at least twenty-five years. In 1998, for instance, Mr. Holley was kicked in the back by a prison official for "no reason whatsoever." (JA 74). In 2000, WRSP officers used a stun gun on an inmate who was likely going into insulin shock. (JA 73). Just hours after this incident, the inmate lapsed into a coma and later died of heart failure. (JA 73). Mr. Holley's pleadings show that these types of abuses at WRSP have been so bad that they have prompted inquiries from the Interfaith Action for Human Rights and from Connecticut's human rights agency. (JA 62, JA 73); *see also* (JA 59) (claiming that Assistant Warden Combs was "aware of over 20 years of credible inmate complaints, attorney complaints and famil[y] complaints about WRSP's correctional officers excessive use of force on inmates as a means of punishment and not for legitimate reasons"); (JA 83) (referencing the looming threat of being "beat down" for requesting breathing treatments).

Because of these abuses, Mr. Holley alleged that he lives in reasonable fear of future harm. (JA 60) (alleging that he "suffers repeated sleepless nights, plagued by

repeated night-terrors of officers chaining [him] down onto wooden planks absolutely for no reason at all"). Thus, as in *Newkirk* and *Johnson*, Mr. Holley's allegations regarding the conduct of prison officials at WRSP toward him and other inmates established that he was in imminent danger of serious physical injury at the time he filed his complaint. *See Newkirk*, 812 F. App'x at 160; *Johnson*, 200 F. App'x at 272.

## Conclusion

Mr. Holley sufficiently alleged both ongoing physical injury and a pattern of misconduct evidencing a likelihood of serious physical injury. He was repeatedly and severely mistreated by the defendants, and then denied treatment neccessitated by their abuse. Because the district court did not address Mr. Holley's continued physical struggles or the longstanding pattern of misconduct at WRSP, Mr. Holley respectfully asks this Court to reverse the order that denied him *in forma pauperis* status.

## Request for Oral Argument

Mr. Holley's allegations present an important line-drawing question in the wake of *Hall v. United States* regarding the imminent danger exception to the PLRA's three-strikes rule. 44 F.4th 222 (4th Cir. 2022). His allegations are substantial and specific, and denying him *in forma pauperis* status would create a practically unattainable standard for *pro se* incarcerated plaintiffs. That being the case, we respectfully request oral argument.

Respectfully submitted,

/s/ Thomas Burch
Thomas V. Burch
Appellate Litigation Clinic
Univ. of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

<u>**Certificate of Compliance**</u>

This brief complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) because it contains 6,590 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Goudy Old Style font.

/s/ Thomas Burch
Thomas Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

**Certificate of Service**

I, Thomas Burch, certify that this Opening Brief was served on all parties registered with the Court's ECF system on September 30, 2024. I also certify that it was served that same day by United States mail, postage prepaid, on:

Garfield William Holley
Prisoner Number 1062808
Sussex I State Prison
24414 Musselwhite Drive
Waverly, VA 23891

/s/ Thomas Burch
Thomas Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236