No. 22-6177

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GARFIELD WILLIAM HOLLEY,

*Plaintiff-Appellant,*

v.

J. COMBS, *et al.,*

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Virginia

## RESPONSE BRIEF OF APPELLEES

JASON S. MIYARES
  *Attorney General*

TIMOTHY E. DAVIS
  *Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 371-0200 – Facsimile

November 25, 2024

ERIKA L. MALEY
  *Solicitor General*

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

BRENDAN CHESTNUT
  *Deputy Solicitor General*

MICHAEL DINGMAN
  *Assistant Solicitor General*

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...............................................................ii

INTRODUCTION.............................................................................1

ISSUES PRESENTED .....................................................................2

STATEMENT ...................................................................................2

I.    Statutory background .................................................................2

II.   Factual and procedural history ...............................................4

    a.    Holley's litigation history................................................4

    b.    Holley's suit against the Defendants.............................5

STANDARD OF REVIEW ...............................................................10

SUMMARY OF ARGUMENT ..........................................................11

ARGUMENT ...................................................................................13

I.    The district court correctly held that Holley's allegations do not establish that he is in imminent danger of serious physical injury.........................................................................13

    a.    Holley fails to allege a pattern of ongoing misconduct..14

    b.    Holley fails to allege imminent danger from ongoing serious physical injuries.................................................23

II.    Holley's motion to alter or amend the judgment does not meet the high burden that such motions face.......................29

CONCLUSION.................................................................................36

CERTIFICATE OF COMPLIANCE.................................................38

CERTIFICATE OF SERVICE .........................................................39

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abdul-Akbar v. McKelvie,*
239 F.3d 307 (3d Cir. 2001) (en banc) ..................................... *passim*

*Andrews v. Cervantes,*
493 F.3d 1047 (9th Cir. 2007) ............................................. 14

*Asemani v. United States Citizenship & Immigr. Servs.,*
797 F.3d 1069 (D.C. Cir. 2015) .............................. 15, 16, 36

*Ball v. Famiglio,*
726 F.3d 448 (3d Cir. 2013) ......................................... 29, 34

*Banister v. Davis,*
590 U.S. 504 (2020) ........................................................ 30

*Blakely v. Wards,*
738 F.3d 607 (4th Cir. 2013) ........................................... 1, 3

*Brown v. Johnson,*
387 F.3d 1344 (11th Cir. 2004) ........................................ 27

*Chandler v. D.C. Dep't of Corr.,*
145 F.3d 1355 (D.C. Cir. 1998) .......................................... 3

*Ciarpaglini v. Saini,*
352 F.3d 328 (7th Cir. 2003) ............................................ 34

*Coleman v. Tollefson,*
575 U.S. 532 (2015) .............................................. 2, 3, 29

*County of Maui v. Hawaii Wildlife Fund,*
590 U.S. 165 (2020) ........................................................ 22

*Cuomo v. Clearing House Ass'n, L.L.C.,*
557 U.S. 519 (2009) ........................................................ 21

*Daker v. Ward*,
    999 F.3d 1300 (11th Cir. 2021) ........................................................ 35

*The Emily*, 22 U.S. (9 Wheat.) 381 (1824) ...................................... 22, 23

*Garland v. Cargill*,
    602 U.S. 406 (2024) ..................................................................... 22

*Hall v. United States*,
    44 F.4th 218 (4th Cir. 2022) ..................................................... *passim*

*Holley v. Baker*,
    230 F.3d 1352 (4th Cir. 2000) ..................................................... 21

*Holley v. Baker*,
    7:00-cv-00634 (W.D. Va. Aug. 15, 2000) ............................................. 4

*Holley v. Baker*,
    7:98-cv-00406 (W.D. Va. Sept. 16, 1998) ............................................ 4

*Holley v. Counts*,
    No. 05-7480 (4th Cir. Apr. 4, 2006) ................................................ 5

*Holley v. Counts*,
    No. 7:05-cv-192, ECF No. 20 . (W.D. Va. July 21, 2005) ...................... 5

*Holley v. Farmer*,
    30 Fed. Appx. 87 (4th Cir. 2002) ................................................ 4, 5

*Holley v. Farmer*,
    No. 7:01-cv-00610 (W.D. Va. Oct 13, 2001) ........................................ 4

*Holley v. Farmer*,
    No. 7:01-cv-00672 (W.D. Va. Sept. 4, 2001) ....................................... 4

*Holley v. Taylor*,
    No. 08-7592,  (4th Cir. Oct. 16, 2008) ............................................ 5

*Holley v. Taylor*,
    No. 8:08-cv-00404 (W.D. Va. July 10, 2008) ....................................... 5

*Ibrahim v. District of Columbia*,
  463 F.3d 3 (D.C. Cir. 2006) .......................................... 25, 35

*Johnson v. Warner*,
  200 Fed. Appx. 270 (4th Cir. 2006) .................................... 18

*Jones v. Bock*,
  549 U.S. 199 (2007) .................................................... 22

*Lewis v. Sullivan*,
  279 F.3d 526 (7th Cir. 2002) ........................................ 3, 22

*Martin v. Shelton*,
  319 F.3d 1048 (8th Cir. 2003) ................................. 14, 17, 36

*Mitchell v. Federal Bureau of Prisons*,
  587 F.3d 415 (D.C. Cir. 2009) ......................................... 16

*Newkirk v. Kiser*,
  812 Fed. Appx. 159 (4th Cir. 2020) ................................. 18, 19

*Newkirk v. Kiser*,
  No. 19-7649, ECF No. 12 (4th Cir.) .................................... 19

*Newkirk v. Kiser*,
  No. 7:19-cv-00648 (W.D. Va. Sept. 26, 2019) .......................... 19

*Occupy Columbia v. Haley*,
  738 F.3d 107 (4th Cir. 2013) .......................................... 20

*Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*,
  148 F.3d 396 (4th Cir. 1998) .......................................... 30

*Pettus v. Morgenthau*,
  554 F.3d 293 (2d Cir. 2009) ........................................... 27

*Sanders v. Melvin*,
  873 F.3d 957 (7th Cir. 2017) ........................... 26, 27, 28, 35

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v.*
  *OpenBand at Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013) .......................................... 20

*Speaks v. U.S. Tobacco Coop., Inc.*,
 31 F.4th 838 (4th Cir. 2022) .......................................... 21

*Taylor v. Grubbs*,
 930 F.3d 611 (4th Cir. 2019)................................... 2, 3, 22

*United States v. Fitzgerald*,
 906 F.3d 437 (6th Cir. 2018)............................................ 22

*United States v. Taylor*,
 54 F.4th 795 (4th Cir. 2022) ...................................... 11, 31

*Vandiver v. Prison Health Servs., Inc.*,
 727 F.3d 580 (6th Cir. 2013)...................................... 28, 33

*White v. Colorado*,
 157 F.3d 1226 (10th Cir. 1998) ....................................... 32

*Woodford v. Ngo*,
 548 U.S. 81 (2006)............................................................ 3

*Zinkand v. Brown*,
 478 F.3d 634 (4th Cir. 2007).............................. 30, 31, 36

**Statutes**

28 U.S.C. § 1915 .............................................. *passim*

**Other Authorities**

Charles Alan Wright, et al., 11 Federal Practice and
 Procedure (3d ed. 2024) ...................................... 11

Conclusory, Black's Law Dictionary (11th ed. 2019)............................ 33

Fed. R. Evid. 901 ........................................................ 20

Imminent, The American Heritage College Dictionary (3d ed.
 1997)....................................................... 24

Imminent, Black's Law Dictionary (11th ed. 2019)......................... 24, 34

Imminent, Webster's New World Dictionary (3d C. ed. 1994) .............. 24

Imminent Danger, Black's Law Dictionary (7th ed. 1999) ............... 21, 24

Imminently Dangerous, Black's Law Dictionary (7th ed. 1999) ....................................................................... 24

Virginia Parole Board, Parole Decisions for September 2022, with Reasons (Sept. 2022), https://tinyurl.com/2xysfjny (last visited Nov. 25, 2024) ................................................. 4

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. ___22-6177___    Caption: ___Garfield Holley v. J. Combs___

Pursuant to FRAP 26.1 and Local Rule 26.1,

___J. COMBS,  Correctional Officers Edwards, Lawson, Muncy and M. Wynn___
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                             ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Kevin M. Gallagher Date: 09/10/2024

Counsel for: Appellees

Print to PDF for Filing

## INTRODUCTION

Prisoners who have repeatedly filed frivolous or meritless cases, like Garfield Holley, must allege facts showing that they are in "imminent danger of serious physical injury" to proceed *in forma pauperis* (IFP). 28 U.S.C. § 1915(g). Congress included this requirement in the Prison Litigation Reform Act (PLRA) to reduce "the number of frivolous lawsuits flooding the federal courts." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013). Allegations of past harm are insufficient to satisfy this narrow exception.

Holley's allegations show only that his past injuries allegedly have ongoing effects. He alleged no facts to make the required showing that he is in imminent danger of serious physical injury in the future. If Holley's allegations are enough, then the Act's exception would swallow the rule. Repeated frivolous filers could easily evade the Act's requirement by pleading magic words to turn alleged past injuries into an "imminent danger." That interpretation is contrary to the plain text and manifest purpose of the Act, and several of this Court's sister circuits have rejected it. This Court should decline Holley's invitation to create a circuit split and affirm the district court's denial of Holley's IFP status.

## ISSUES PRESENTED

1.    Do allegations of past injuries with ongoing effects satisfy 28 U.S.C. § 1915(g)'s requirement that a prisoner who has filed three or more suits dismissed as frivolous, malicious, or meritless must show "imminent danger of serious physical injury" to proceed *in forma pauperis*?

2.    Did the district court abuse its discretion in denying Holley's motion to alter or amend the judgment where there was no clear error of law or manifest injustice in its order vacating its prior grant of *in forma pauperis* status?

## STATEMENT

### I.   Statutory background

Congress provides indigent plaintiffs with the opportunity to proceed IFP, meaning that "the litigant may commence a civil action without prepaying fees or paying certain expenses." *Coleman v. Tollefson*, 575 U.S. 532, 534–35 (2015). But Congress also has "long recognized the potential for abuse in this system, which reduces the immediate 'economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Taylor v. Grubbs*, 930 F.3d 611, 614 (4th Cir.

2019) (quoting *Coleman*, 575 U.S. at 535). After "conclud[ing] that prisoner litigants were abusing the [IFP] statute by flooding the courts with meritless claims," *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1356 (D.C. Cir. 1998), "Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good through the Prison Litigation Reform Act," *Taylor*, 930 F.3d at 614 (quotation omitted); see *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Blakely*, 738 F.3d at 609.

A key component of the Act is the three-strikes rule. See 28 U.S.C. § 1915(g). That rule bars a prisoner from proceeding IFP if that "prisoner has, on 3 or more prior occasions," filed a suit or appeal that was later "dismissed on the grounds that it [wa]s frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *Ibid*. In essence, the three-strikes rule "imposes a penalty for crying 'wolf'" by "making it harder" for those who do "to continue abusing the courts and their opponents." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). The only exception to this rule applies when the prisoner "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); see *Taylor*, 930

F.3d at 614. Otherwise, a repeated frivolous filer must prepay the filing fee before proceeding with the suit. JA76.

## II.   Factual and procedural history

### a.   Holley's litigation history

Holley was sentenced to life in prison for a litany of offenses, including rape. Virginia Parole Board, Parole Decisions for September 2022, with Reasons, at 37 (Sept. 2022), https://tinyurl.com/2xysfjny (last visited Nov. 25, 2024).

While in prison, Holley accumulated three strikes under the PLRA. The district court noted six different cases that Holley had filed, at least four of which were dismissed as frivolous, malicious, or failing to state a claim for relief. JA75 n.1; see *Holley v. Baker*, 7:98-cv-00406 (W.D. Va. Sept. 16, 1998) (dismissing case under 28 U.S.C. § 1915(e)(2)(B)(ii) as failing to state a claim); *Holley v. Baker*, 7:00-cv-00634 (W.D. Va. Aug. 15, 2000) (dismissing case under 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous or malicious); *Holley v. Farmer*, No. 7:01-cv-00672 (W.D. Va. Sept. 4, 2001) (dismissing case as frivolous, malicious, or failing to state a claim under 28 U.S.C. § 1915A(b)(1)), aff'd, *Holley v. Farmer*, 30 Fed. Appx. 87 (4th Cir. 2002); *Holley v. Farmer*, No. 7:01-cv-00610 (W.D. Va. Oct 13, 2001) (dismissing case as frivolous, malicious, or failing to state a claim

under 28 U.S.C. § 1915A(b)(1)), aff'd, *Holley v. Farmer*, 30 Fed. Appx. 87 (4th Cir. 2002).

After accumulating three strikes for filing frivolous lawsuits, Holley continued to file numerous additional suits. See, *e.g.*, *Holley v. Taylor*, No. 8:08-cv-00404 (W.D. Va. July 10, 2008) (dismissing case for failure to pay filing fee and denying IFP status for failure to demonstrate imminent danger of serious physical injury); *Holley v. Counts*, No. 7:05-cv-192, ECF No. 20 at 1 n.1 (W.D. Va. July 21, 2005) (report and recommendation adopted by *Holley v. Counts*, No. 7:05-cv-192, ECF No. 28 (W.D. Va. Aug. 1, 2005)) (similar). This Court has thus noted on multiple occasions that Holley has violated the three-strike rule. See *Holley v. Counts*, No. 05-7480 (4th Cir. Apr. 4, 2006) (denying Holley's motion to proceed IFP); *Holley v. Taylor*, No. 08-7592 at Docket No. 9 (4th Cir. Oct. 16, 2008) (citing *Holley v. Counts*, No. 05-7480 at Docket No. 30 (4th Cir. Apr. 4, 2006)).

### b.  Holley's suit against the Defendants

Holley filed this case in September 2020 while incarcerated at Wallens Ridge State Prison, asserting various claims about alleged events that took place in October and November 2018. JA7-10. The

district court initially granted Holley IFP status and informed him of the statutory requirements of IFP status. JA16-19; JA21-22. It also granted Holley leave to amend his complaint, JA21, which he did, JA23-29.

Holley's operative complaint alleges an Eighth Amendment violation on the grounds that he was "permanently physically injured" by prison officials. JA24. Holley alleges that prison officials transported him to a dental appointment in October 2018, where he underwent oral surgery. JA24-26. The week after his appointment, Holley complained of knee pain and nosebleeds, but a nurse explained that nosebleeds were normal after a dental procedure like the one Holley had just undergone. JA26.

Several weeks later, Holley, a "chronic asthmatic," JA24, experienced "shortness of breath[,]" JA26. Holley walked to the nurse's station, where he "received emergency breathing treatment and medicine [via] hip injection." JA26. Holley alleges that a nurse instructed him to refuse medical housing and advised that a "physician would be over to" see Holley. JA26. Three days later, Holley continued experiencing breathing problems that he attributed to asthma. JA27. Seeing Holley's condition, officers "wheelchaired" Holley to the nurse's station, where

nurses diagnosed Holley with pneumonia and sent him to the hospital. JA27. Holley alleges that he lost consciousness but was periodically awoken by handcuffs that were placed too tightly on his wrists, causing injuries. JA27-28.

Holley attached a single grievance from December 2019 to the amended complaint. JA31. It asserted that Holley was a "survivor" of a "botched execution," which had caused him "extreme paranoia." JA31. He reported shortness of breath, for which he used his asthma inhaler, as well as myriad other ailments including nervousness, hand and wrist pain, mouth and face pain, a cough, being "surrounded by a shroud of darkness/unidentifiable," and excessive eating. JA31.

Defendants filed a motion to dismiss, pointing out that Holley had three strikes under the PLRA, and that the court may wish to reconsider Holley's IFP status. JA48 n.1. Holley filed an opposition to the motion to dismiss. JA55-60. Holley also attached documents to his opposition that purport to show, among other things, that newspapers have reported on allegations of misconduct at Wallens Ridge, JA62-63, JA73; that Holley filed a grievance regarding his hand pain and numbness in December 2018, JA71; that Holley received hospital treatment, including a CT scan,

in December 2018, JA72; that Holley reported hand pain in September 2019 and he was placed on a nursing sick call one day later, JA65; and that, in December 2019, Holley had multiple follow-up appointments for the issues he reported, which Holley labeled "[m]ental [h]ealth" issues. JA64.

The district court did not reach the merits of Holley's claim but instead dismissed the complaint pursuant to § 1915(g). In its opinion, the court found that at least three of Holley's previous lawsuits had "been dismissed as frivolous or for failure to state a claim." JA75. Thus, under the PLRA, Holley could not proceed unless he either prepaid the filing fee or "show[ed] that he is 'under imminent danger of serious physical injury.'" JA75-76 (quoting 28 U.S.C. § 1915(g)). Because Holley had alleged only ongoing effects of "incidents in October and November 2018," the court concluded, he did "not allege any ongoing danger." JA76.

The district court liberally construed Holley's complaint in arriving at this conclusion, and even considered statements in Holley's opposition to the motion to dismiss. For example, the court explained that "[t]he only possible reference to any current danger to Holley is his vague reference in his opposition to the 'dark and evil world of Wallens Ridge State

Prison,'" but, as the court noted, that is not the kind of "specific fact allegation[]" that § 1915(g) requires. JA76. Because "Holley's allegations fall far short of the required showing," and Holley did not pay the filing fee, the district court revoked Holley's IFP status, denied the motion to dismiss as moot, and dismissed the case. JA76-77.

Holley filed a "motion to amend and/or alter" the judgment denying IFP status "pursuant to Rule 59(e) of the rules of civil procedure." JA78. In that motion and accompanying memorandum, Holley raised new factual assertions, including that he continued to receive treatment for his breathing problems. See, *e.g.*, JA78 (asserting that Holley has received "over (100) one-hundred doctored breathing treatments" since the alleged October 2018 incident); JA80 (asserting that Holley is taking "medications to continue to live after" the pneumonia infection). The motion claimed occasional delays in treatment—for example, an alleged delay of "eleven days" between breathing treatment being requested and administered—but it identified no adverse consequences arising from these asserted delays. JA82. Holley also complained of unrelated ailments, like nasal issues allegedly caused by pepper spray being used near him and a fall that caused a dislocated shoulder, although he stated

that he received treatment and prescription medication for these issues. JA81 (medication and treatment for nasal issues); JA84 (physical therapy for shoulder injury).

The district court denied the motion. The district court rejected Holley's argument that Rule 59(e) relief was merited because the judgment "works an injustice." JA78. It held that the motion continued to assert ongoing effects from past injuries, not any future danger that existed, including from future lack of treatment or delay of treatment. JA89. Given that a Rule 59(e) motion may only succeed under "extraordinary" circumstances, including "a clear error of law or manifest injustice," the court held that Holley had not met his burden for such relief. JA88-89 (quotation marks omitted). Holley appealed the denial of his motion to amend or alter the judgment. JA90.

## STANDARD OF REVIEW

This Court addresses statutory-interpretation questions and district-court determinations that a litigant with three strikes under the PLRA has failed to adequately allege imminent danger of serious physical injury de novo. *Hall v. United States*, 44 F.4th 218, 222 (4th Cir. 2022). "District courts have broad discretion" in considering "all the

factual allegations" to determine whether those allegations are sufficient to invoke the exception. *Id.* at 225.

This Court "review[s] a district court's denial of a Rule 59(e) motion to alter or amend a judgment for abuse of discretion." *United States v. Taylor*, 54 F.4th 795, 802 (4th Cir. 2022). Thus, to the extent Holley's arguments rely upon assertions included in the motion to alter or amend the judgment or its attachments, JA75-87, the standard of review is abuse of discretion. *Taylor*, 54 F.4th at 802; Charles Alan Wright, et al., 11 Federal Practice and Procedure § 2818 (3d ed. 2024) ("The district court judge's decision granting or denying a Rule 59(e) motion is reviewed for abuse of discretion.").

## SUMMARY OF ARGUMENT

Holley's allegations do not satisfy the PLRA. The district court correctly revoked Holley's IFP status and did not abuse its discretion in denying Holley's motion to alter or amend the judgment. The plain text and structure of the PLRA dictate that the Act's imminent-danger exception requires a risk of *future* harm. Allegations of past harms with ongoing effects cannot meet the exception's high bar.

Holley's amended complaint alleges no facts that, if true, would establish that he is in imminent danger of serious physical injury in the future. His conclusory allegations about a pattern of misconduct do not suffice. Holley alleges two isolated incidents that occurred two years before he filed the complaint, with no indication that related misconduct is continuing. Vague assertions of plots, schemes, or generalized misconduct throughout the prison do not salvage the otherwise deficient allegations.

Further, as the district court stated, Holley's allegations concern two distinct injuries that allegedly occurred in 2018: contracting pneumonia after transportation to a surgical appointment and wrist injuries from being handcuffed too tightly when hospitalized to treat that pneumonia. Holley argues that the ongoing effect of those injuries means that the injuries themselves are "imminent." That is not correct; the exception requires a risk of future serious physical injuries. Moreover, Holley does not allege facts showing that officials are failing to treat him for the alleged ongoing issues, or that such lack of treatment will lead to serious physical injury in the future, as the Act requires.

Holley's additional assertions in his motion to alter or amend the judgment and his attachments do not move the needle. Indeed, those allegations establish that Holley has undergone extensive treatment for his breathing issues and that medical professionals treat him when he requests care. This Court should affirm.

## ARGUMENT

## I. The district court correctly held that Holley's allegations do not establish that he is in imminent danger of serious physical injury

In *Hall*, this Court held that the § 1915(g) exception "is triggered only if the incarcerated person alleges sufficient and specific facts establishing that he or she is in imminent danger of serious physical injury at the time of filing." [44 F.4th at 224](). "[V]ague, speculative, or conclusory allegations are insufficient"; rather, the inmate must make "specific fact allegations" of either "a pattern of misconduct evidencing the likelihood of imminent serious physical injury" or "ongoing serious physical injury." *Ibid.* (quotation marks omitted). The district court correctly held that Holley has not alleged either the requisite pattern of misconduct or ongoing serious physical injury.

### a. Holley fails to allege a pattern of ongoing misconduct

First, Holley failed to allege "a pattern of past conduct that places an incarcerated person in imminent danger of harm, and which is ongoing." *Hall*, 44 F.4th at 225. Holley alleges no pattern of misconduct, let alone one that shows that any serious physical injury is imminent or "likel[y]." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Rather, accepting his argument would conflict directly with the holdings of several sister circuits.

Holley attempts to invoke the Act's exception based on two unrelated events in October and November 2018—an alleged six-hour ride to his dentist appointment and the use of overly tight handcuffs while he was in the hospital—coupled with conclusory assertions that Wallens Ridge officials engage in misconduct on a widespread basis. Holley Br. 25–27. But the Act requires specific factual allegations establishing an ongoing pattern of misconduct related to the complaint's claims. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 n.1 (3d Cir. 2001) (en banc); see also *Hall*, 44 F.4th at 224 (requiring "*specific* fact allegations . . . of a pattern of misconduct evidencing the likelihood of imminent serious physical injury" (emphasis added)); *cf. Andrews v. Cervantes*, 493

[F.3d 1047, 1056](#) (9th Cir. 2007) (plaintiff adequately alleged an ongoing pattern of misconduct by alleging that prison officials repeatedly placed "him in close proximity to inmates . . . with serious contagious diseases," a pattern "demonstrated by [the plaintiff's] tuberculosis infection during a previous period in . . . custody and by an ongoing hepatitis outbreak at" the plaintiff's prison).

"[G]eneralized" allegations "that prison officials engaged in continuing harassments, plots to hurt or kill [a plaintiff], and other forms of" misconduct do not suffice. *Abdul-Akbar*, [239 F.3d at 315](#) n.1 (cleaned up). Instead, allegations must set out specific facts that "connect . . . separate incidents . . . into a pattern of threats of serious physical injury that are ongoing." *Ibid.* Holley alleges two incidents of asserted misconduct from 2018, years before he filed his complaint. Apart from those allegations, he makes only conclusory assertions that Wallens Ridge officials create a "generally dangerous" environment. *Asemani v. United States Citizenship & Immigr. Servs.*, [797 F.3d 1069, 1075](#)–76 (D.C. Cir. 2015) (gathering cases); Holley Br. 25–27. These allegations are insufficient to establish a pattern of conduct creating an imminent danger of serious physical injury. *Asemani*, [797 F.3d at 1075](#)–76.

Indeed, accepting Holley's argument about an alleged pattern of misconduct would create a circuit split with at least the District of Columbia, Third, and Eighth Circuits. The District of Columbia Circuit has refused to apply the three-strike exception to a prisoner who alleged "a violent assault . . . seventeen months before he filed" suit and that "the prison was generally dangerous and was known for murder and assaults on known snitches like" the plaintiff. *Asemani*, 797 F.3d at 1075 (cleaned up) (discussing *Mitchell v. Federal Bureau of Prisons*, 587 F.3d 415, 420–21 (D.C. Cir. 2009)). *Asemani* itself denied IFP status to a plaintiff who alleged "that he suffered two beatings in the past" and that, despite his move to protective custody, he was still under "threat of violence due to" the general dangers of the prison environment, including "inmate enemies." 797 F.3d at 1076. Under Holley's reasoning, both of those plaintiffs would be excepted from the three-strike rule.

The en banc Third Circuit likewise rejected an argument of ongoing danger "[e]ven under a liberal reading of" a complaint, because the plaintiff alleged only one specific incident of misconduct along with "several other acts of physical harassment by different prison officials." *Abdul-Akbar*, 239 F.3d at 315 n.1. The court disregarded those acts

because they "pre-date[d]" the incident alleged in the complaint and "appear[ed] entirely unconnected to it." *Ibid.* The deficient allegations were not saved by allegations of "continuing harassment, plots to hurt or kill [the plaintiff], and other forms of retaliation," as "such generalized allegations [are] insufficient to" establish "a pattern of threats of serious physical injury that are ongoing." *Ibid.*

Further, the Eighth Circuit rejected a prisoner plaintiff's argument for IFP status when he alleged "that defendants forced him to work outside in inclement conditions on two occasions five months apart" as part of an ongoing plot "to kill [the plaintiff] by forcing him to work in extreme conditions despite his blood pressure condition." *Martin*, 319 F.3d at 1050. Those allegations were too "conclusory" and "general" to "invoke the exception." *Ibid.* Thus, if this Court were to accept Holley's argument, it would be in direct conflict with at least three other Courts of Appeals that deny IFP status on an ongoing-harm theory where the allegations establish only a few isolated events, coupled with conclusory allegations about plots, threats, dangers, or misconduct throughout the prison.

By contrast, Holley relies only on nonprecedential and inapposite unpublished decisions from this Court. See Holley Br. 27 (citing *Johnson v. Warner*, 200 Fed. Appx. 270 (4th Cir. 2006), and *Newkirk v. Kiser*, 812 Fed. Appx. 159 (4th Cir. 2020)); *Hall*, 44 F.4th at 233 n.11 ("Pursuant to our Local Rule 36(c), we do not accord precedential value to our unpublished decisions."). In *Johnson*, for instance, the plaintiff had alleged that he was personally "threatened by defendants with bodily harm and death," and "described in detail a number of alleged assaults" ranging from six years to "one month before he filed his complaint." *Id.* at 271. Here, Holley alleges, at most, two incidents that took place almost two years before he filed his complaint. JA23-29. These isolated events, combined with conclusory assertions about the treatment of other prisoners, are not enough to establish that Holley is in "imminent danger."

*Newkirk* is likewise inapposite. In that unpublished opinion, this Court held that the plaintiff had adequately alleged an ongoing pattern of misconduct that created an imminent danger of serious physical injury based on "one incident" of alleged excessive force and an "assert[ion] that this was not an isolated occurrence" due to allegations that "prison staff

members regularly assault inmates without cause and threaten inmates who complain." 812 Fed. Appx. at 160. *Newkirk* differs from this case in both temporal proximity and similarity of conduct. The alleged incident of excessive force in *Newkirk* took place a mere eight days before the plaintiff filed the complaint. See Complaint, *Newkirk v. Kiser*, No. 7:19-cv-00648 (W.D. Va. Sept. 26, 2019) (alleging assault by prison official eight days earlier, on September 18, 2019). In this case, however, the latest alleged misconduct took place in November 2018, almost two years before Holley filed his complaint. JA28.

And in *Newkirk*, the pattern of misconduct that the plaintiff alleged related directly to the "practice that has injured him." 812 Fed. Appx. at 160; see also *Newkirk v. Kiser*, No. 19-7649, ECF No. 12 (4th Cir.) (claiming a second incident of excessive force weeks after filing his complaint, as well as additional specific threats). That is not the case with Holley. His alleged harm is based on prison officials allegedly transporting him without heat and handcuffing him too tightly. Holley Br. 24–25. By contrast, he attempts to establish a pattern of misconduct by alleging that, dating back over twenty-five years, other prison officials "kicked [him] in the back," "used a stun gun on an inmate who was likely

going into insulin shock," and "attack[ed] an inmate upon the inmate's arrival at the prison." *Id.* at 25–26.[1] These alleged "several other acts of physical harassment by different prison officials" are exactly the type of allegations rejected by the Third Circuit, because they "appear entirely unconnected to" the incidents alleged in the complaint. *Abdul-Akbar*, 239 F.3d at 315 n.1.

At bottom, Holley's argument that he has shown a pattern of misconduct establishing an imminent risk of serious physical injury ignores the text and manifest purpose of the PLRA. The Act requires a prisoner to show that he or she is *personally* "under imminent danger of serious physical injury." 28 U.S.C. § 1915. Generalized allegations about prison misconduct do not show "[a]n immediate, real threat to one's

---

[1] Throughout, Holley's brief improperly conflates allegations in the amended complaint, assertions from the motion-to-dismiss briefing, and assertions made in the Rule 59(e) motion to alter or amend the judgment. This Court should not consider Holley's assertions in his opposition to Defendants' motion to dismiss and objections to Defendants' answer. *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("[P]arties cannot amend their complaints through briefing or oral advocacy."). These documents do not even meet the standard for documents offered by a defendant in support of a motion to dismiss. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (explaining that documents supporting a motion to dismiss must be "integral to the complaint" and authentic); see Fed. R. Evid. 901(a).

safety." Imminent Danger, Black's Law Dictionary (7th ed. 1999). And caution in accepting generalized allegations is particularly necessary here, where the statute addresses plaintiffs with a history of abusing the judicial system with frivolous, malicious, and meritless lawsuits. 28 U.S.C. § 1915(g).

Holley's own briefing is a prime example of how, if he prevails, a litigant with a history of frivolous allegations could easily evade a statute designed to reduce frivolous cases by relying on further frivolous allegations. Holley argues that a pattern of misconduct exists because he "was kicked in the back by a prison official for 'no reason whatsoever'" in 1998. Holley Br. 26 (quoting JA74). But the document Holley cites is a filing from *Holley v. Baker*, a case Holley took to trial and *lost. Holley v. Baker*, 230 F.3d 1352 (4th Cir. 2000) (table). This Court should reject Holley's attempt to avoid a bar on frivolous filers obtaining IFP status by re-raising a claim that he has already litigated and lost.

A statutory exception cannot swallow its rule. *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009); *Speaks v. U.S. Tobacco Coop., Inc.*, 31 F.4th 838, 843 (4th Cir. 2022). Nor can a court render a statute ineffective by adopting an interpretation that "enable[s]

[litigants] to elude its provisions in the most easy manner." *The Emily*, 22 U.S. (9 Wheat.) 381, 389 (1824); see *County of Maui v. Hawaii Wildlife Fund*, 590 U.S. 165, 178–79 (2020) (rejecting interpretation that would have created "a large and obvious loophole" in the Clean Water Act). These principles are "modest corollar[ies] to the commonsense proposition that Congress presumably does not enact useless laws." *Garland v. Cargill*, 602 U.S. 406, 427 (2024) (quotation omitted). And they bar even interpretations that may not render a statute entirely "toothless," but still remove "its most meaningful bite." *United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018).

Here, the PLRA's goal is to control the "endless flood of frivolous litigation brought by inmates," *Hall*, 44 F.4th at 222 (quotation marks omitted), and thereby "filter out the bad claims [to] facilitate consideration of the good," *Taylor*, 930 F.3d at 614 (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). Its three-strike rule accordingly "mak[es] it harder for persons who have demonstrated a proclivity to pursue frivolous suits," like Holley, "to continue abusing the courts and their opponents." *Lewis*, 279 F.3d at 531.

This Court, "knowing the clearly stated legislative purpose, . . . may not disembowel the legislative act." *Abdul-Akbar*, 239 F.3d at 316. It should therefore reject Holley's arguments, as Holley's interpretation of the PLRA would "enable [litigants] to elude its provisions in the most easy manner." *The Emily*, 22 U.S. at 389. Instead, it should give effect to the text and manifest purpose of the PLRA and affirm.

### b. Holley fails to allege imminent danger from ongoing serious physical injuries

Holley's amended complaint also does not allege facts showing that he is in imminent danger from ongoing serious physical injuries for which he is being denied medical treatment. See *Hall*, 44 F.4th at 226–27. Rather, it alleges only ongoing *effects* of past injuries. These past injuries cannot establish the requisite "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Again, Holley is asking this Court to create a circuit split—this time with the Seventh Circuit.

Holley alleges past injuries arising from two events: first, that transportation to an oral surgery appointment caused a pneumonia infection that eventually required hospitalization, JA24-27, and second, that being handcuffed too tightly during that hospitalization caused injuries to his wrists and hands, JA27-28. Those events occurred in

October and November 2018, nearly two years before Holley filed suit in September 2020. JA3, JA24, JA27.

These allegations do not establish any "imminent danger." 28 U.S.C. § 1915(g). The three-strike rule exception applies only to future risks of injury that are "immediate, real threat[s] to one's safety." Imminent Danger, Black's Law Dictionary (7th ed. 1999); Imminently Dangerous, Black's Law Dictionary (7th ed. 1999) ("reasonably certain to place life and limb in peril."). It does not apply to "harms that ha[ve] already occurred." *Abdul-Akbar*, 239 F.3d at 315. Thus, the danger of a serious physical injury must be "threatening to occur immediately[,] dangerously impending," or "about to take place" at the time of filing. Imminent, Black's Law Dictionary (11th ed. 2019).[2] In other words, the "'imminent danger' [must] exist contemporaneously when the action is filed"; "someone whose danger has passed cannot reasonably be described

---

[2] The edition of Black's Law Dictionary contemporaneous with passage of the PLRA does not define "imminent" standing alone but, as recounted above, it does define "imminent danger." Other contemporaneous dictionaries contain the immediacy requirement that the 2019 edition of Black's does. *E.g.*, Imminent, The American Heritage College Dictionary (3d ed. 1997) ("About to occur; impending."); Imminent, Webster's New World Dictionary (3d C. ed. 1994) ("[L]ikely to happen without delay.").

as someone who 'is' in 'imminent' danger." *Hall*, 44 F.4th at 224. Holley's amended complaint is devoid of any factual allegations showing that he was in danger of an injury that was "about to occur at any moment" when "the complaint [wa]s filed." *Abdul-Akbar*, 239 F.3d at 312, 315; see JA23-29; JA76 (noting that Holley "does not show, or even allege, that he is in imminent danger of serious physical harm").

Holley instead contends that he "experienced multiple delays in medical care" and "the delays exacerbated his chronic asthma." Holley Br. 16. But delay or denial of treatment only suffices for the "imminent danger" requirement if it poses a danger of serious injury "additional" and "*further*" to the existing chronic condition. *Ibrahim v. District of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006) (emphasis in original) (noting that the plaintiff had alleged untreated Hepatitis C, which poses a risk of "*further* liver damage, as well as death, liver and multiple organ failures"); *see Hall*, 44 F.4th at 226 ("the denial and/or delay of medical treatment, which allegedly causes *worsening, and possibly life-altering*, serious injuries," can suffice (emphasis in original)). That is so because Congress limited the exception to "imminent," *i.e.*, future, dangers of serious physical injury. 28 U.S.C. § 1915(g). Thus, a plaintiff cannot

merely allege "a normal incident" of a chronic condition. *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017).

Adopting Holley's argument would conflict with the Seventh Circuit's holding in *Sanders*. There, a prisoner alleged that the conditions of his confinement were "aggravating . . . his asthma." *Id.* at 959. The Seventh Circuit explained that not every risk is an imminent risk of serious physical injury. Instead, "[m]any risks, for many people (including asthmatics), never come to pass or turn out not to be serious." *Id.* at 960. Because breathing problems were "a normal incident of asthma rather than a 'serious' incremental harm," and asserting that "the general dangers of prison life" might worsen those problems was not enough to show any imminent danger, the court rejected the plaintiff's arguments. *Ibid*.

Like the plaintiff in *Sanders*, Holley at most alleges that he has suffered lung damage from his chronic asthma and that past injuries to his hands and wrists have continuing effects. JA23-31; see also Holley Br. 21 ("[D]ue to WRSP's failure to provide proper care, Mr. Holley's injuries persist."). But Holley's argument misses the mark. These allegations do not establish that any additional "life-altering" injuries are

imminent. *Hall*, 44 F.4th at 226–27; see *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (holding that a plaintiff had met the exception's requirements by pleading "a total withdrawal of treatment" that in turn caused new "severe ongoing complications"). If they did, "the statute would not serve to curtail litigation by those who have demonstrated a propensity to make baseless or malicious claims." *Sanders*, 873 F.3d at 960.

The Act contains a "self-evidently narrow" safety valve for prisoners in imminent danger of serious physical injury. *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). Again, the statute only applies to proven repeated frivolous filers, and its narrow exception was manifestly not intended to swallow the rule. See Argument I.a., *supra*. The Act thus must require more than basic allegations about past injuries, coupled with general complaints about the quality of prison medical treatment. More "specific" allegations are necessary, and they must contain sufficient facts to establish each of the exception's requirements. *Hall*, 44 F.4th at 224 ("[T]he exception is triggered only if the incarcerated person alleges sufficient and specific facts establishing that he or she is in imminent danger of serious physical injury at the time of filing.").

Otherwise, the exception would be no more than "a magic-words requirement, where a plaintiff can repeatedly allege a fabricated imminent danger." *Hall*, 44 F.4th at 239 (Richardson, J., concurring in the judgment). And it would make little sense for a statute "aimed at prisoners who have consistently cried wolf by bringing frivolous lawsuits" to allow those prisoners to "avoid the consequences of their frivolous litigation by promising . . . that this time the wolf is real." *Id.* at 239 n.11. This Court should "refuse to conclude that with one hand Congress intended to enact a statutory rule that would reduce the huge volume of prisoner litigation, but, with the other hand, it engrafted an open-ended exception that would eviscerate the rule." *Abdul-Akbar*, 239 F.3d at 315. Instead, prisoner plaintiffs must allege with specificity underlying facts that, if true, show an imminent danger of serious physical injury. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) ("[T]he allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists.").

Here, Holley's asserted physical injuries already existed at the time of filing and were therefore not "imminent." A "normal incident" of an existing condition cannot satisfy the exception. *Sanders*, 873 F.3d at 960.

Holley's asthma and wrist injuries are alleged *past* injuries with ongoing effects, and do not show that he is at imminent risk of "life-threatening medical issues" or "severe bodily harm" in the future. *Hall*, 44 F.4th at 227; see also *Ball v. Famiglio*, 726 F.3d 448, 468 (3d Cir. 2013), partially abrogated on other grounds by *Coleman*, 575 U.S. 532 ("[E]ven if poor care for her past injuries, her eyesight, or her arthritis may prove detrimental to [plaintiff's] health over time, they do not represent imminent dangers which are about to occur at any moment or are impending." (quotation marks omitted)). Past injury is not what the imminent danger inquiry focuses on.

At bottom, Holley's argument is that his medical care was not "proper." Holley Br. 8, 21. But the statute concerns itself with delay or denial of care that will imminently cause serious physical injury, not with all complaints concerning prison medical care. *Hall*, 44 F.4th at 226–27.

## II. Holley's motion to alter or amend the judgment does not meet the high burden that such motions face

The district court did not abuse its discretion in denying Holley's Rule 59(e) motion. A court grants a motion to alter or amend the judgment under Rule 59(e) only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available

at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (cleaned up). "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020). "Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quotation omitted). Here, Holley argued that the judgment "work[ed] an injustice," invoking the third basis for a Rule 59(e) motion. JA78; JA89.

Holley's motion improperly relied upon new arguments and new allegations that he could have raised prior to the district court's judgment. *E.g.*, JA81 (recounting alleged grievances from 2019, before Holley filed suit in 2020). Other allegations concern events that arose after Holley filed suit, but before the Defendants raised Holley's three-strike status in their partial motion to dismiss. *E.g.*, JA82 (alleging events in December 2020). Because Holley could have raised these events before the district court entered judgment, but failed to do so, this Court should disregard these assertions as improper to consider on a Rule 59(e) motion. *Banister*, 590 U.S. at 508.

Even if this Court does consider all of Holley's new factual assertions, they do not demonstrate that the district court abused its discretion in not finding a "clear error of law" or "manifest injustice" in its revocation of IFP status. *Zinkand*, 478 F.3d at 637; *Taylor*, 54 F.4th at 802. For instance, Holley asserts that part of the prison was "flooded with security pepper spray resulting" in nasal congestion, nosebleeds, and a lost sense of smell, JA81, and that he fell and dislocated his shoulder, JA84. He does not assert that these injuries have any nexus to the alleged misconduct in the complaint. See *Hall*, 44 F.4th at 230 (requiring litigants "to demonstrate a nexus between the claims presented and the imminent danger alleged").

If anything, the additional factual assertions in Holley's Rule 59(e) motion dispel the notion that Holley experienced any serious "continued denial and delay in providing medical treatment." *Hall*, 44 F.4th at 231. Holley affirmatively states that he has been taking "medications" to treat the effects of his "November 27, 2018 hospitalization" for pneumonia and its ongoing effects. JA80-81. He also claims that he has received "over (100) one-hundred doctored breathing-treatments." JA78. Where a plaintiff admits to having "been seen in the prison infirmary a very

considerable number of times over a three-year period," that "fail[s] to raise a credible allegation [of] imminent danger of serious physical harm." *White v. Colorado*, 157 F.3d 1226, 1231–32 (10th Cir. 1998). And although Holley asserts occasional delays in medical treatment, JA82, he does not show that these delays had any adverse consequences, let alone that they have created the imminent danger of additional serious physical injury necessary to satisfy the statute, *Hall*, 44 F.4th at 227.

Holley also claims that his grievances were "repeatedly denied or ignored." Holley Br. 17. But whether or not his grievances were denied is irrelevant to his argument that inadequate medical treatment puts him in imminent danger. For example, one of Holley's grievances complained of shortness of breath and other pain in December 2019, but his own materials show that he was seen by medical staff a dozen times that month, including for numerous breathing treatments. See JA82. It is understandable that the staff responsible for adjudicating his grievance concluded that it was "unfounded." JA82.

Thus, even considering Holley's additional factual assertions in the Rule 59(e) motion, Holley admits that he is being treated by doctors for his breathing problems, and he therefore does not establish an imminent

danger of serious physical injury. See *Hall*, 44 F.4th at 227 (requiring that a plaintiff provide specific allegations of "continually denied necessary medical care"); *Vandiver*, 727 F.3d at 587 (requiring that the underlying chronic health issue must "result in serious injury . . . when the illness is left untreated").

Holley's assertion that he received "inadequate" medical care for the alleged injuries to his hands and wrists fares no better. Holley Br. 20. By his own admission, Holley received medical attention when he complained of hand and wrist pain, and on some occasions was given medication. See, *e.g.*, JA39, JA65 (Holley reported hand pain in September 2019 and was placed on a nursing sick call one day later). Nothing about these allegations shows a deterioration in his condition that would support his "imminent danger" claim. At most, he has shown that his injuries "persist," not that his condition is worsening. *Hall*, 44 F.4th at 227.

Moreover, his wrist-injury claim is the very definition of conclusory, as it "[e]xpress[es] a factual inference," that Holley received no care, "without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (11th ed. 2019). "[V]ague and utterly

conclusory assertions that medical treatment has been withheld, particularly when a prisoner has been *seen* repeatedly by a physician, do not amount to a showing of imminent danger." *Ball*, [726 F.3d at 468](). Because Holley admitted to receiving medical care, the district court was "within its discretion to dismiss allegations of imminent harm or injury because of delayed or denied medical care" because they were "conclusory." *Hall*, [44 F.4th at 227](); see *Ciarpaglini v. Saini*, [352 F.3d 328, 331]() (7th Cir. 2003) (explaining that allegation of being "seen by prison doctors" but that necessary medication was being withheld "is not" an allegation that the plaintiff "was denied medical care," but instead is mere "disagreement with medical professionals about [the plaintiff's] needs").

Likewise, Holley's additional assertions do not show that any serious injury is imminent. To begin, the fact that Holley's additional factual assertions do not reveal any additional serious injury attributable to the events alleged in the complaint underscores that no such injury was "threatening to occur immediately[,] dangerously impending," or "about to take place" at the time of filing. Imminent, Black's Law Dictionary (11th ed. 2019). If it were, it likely would have happened in

the year between Holley's amended complaint and his motion to alter or amend the judgment. JA4-5; see *Daker v. Ward*, 999 F.3d 1300, 1312 (11th Cir. 2021) ("If [defendant's] practice of forcibly shaving [the plaintiff] truly posed an imminent danger to him, he arguably would have contracted an infectious disease at some point in the last eight years.").

Holley's assertions establish, at most, that he is experiencing the same ongoing *effects* of his asthma and wrist injuries. Nothing in the Rule 59(e) motion, if true, shows that any delay or denial of treatment has caused any serious "additional" or "*further*" injury beyond Holley's existing conditions. *Ibrahim*, 463 F.3d at 7; see *Hall*, 44 F.4th at 227 (requiring that the delay or denial of medical treatment must "result[] in serious physical injur[y]"); *Sanders*, 873 F.3d at 960 (holding that asthmatic plaintiff's "struggle to breathe" from "heat and restricted ventilation" did not satisfy the exception).

Finally, Holley's Rule 59(e) motion does not assert any additional information establishing a pattern of misconduct likely to result in an imminent danger of serious physical injury. Holley's assertions that officials have threatened him, JA85, are no more than the types of conclusory assertions of plots, schemes, threats, and other alleged

behavior that do not suffice to invoke the exception. *Abdul-Akbar*, 239 F.3d at 315 n.1; *Asemani*, 797 F.3d at 1075; *Martin*, 319 F.3d at 1050.

At a minimum, Holley's admitted and extensive medical treatment, including at least 100 breathing treatments, JA78, establishes that there was no "clear error" or "manifest injustice" in the district court's decision to revoke his IFP status. *Zinkand*, 478 F.3d at 637 (4th Cir. 2007). The district court therefore did not abuse its discretion in denying Holley's Rule 59(e) motion, and this Court should affirm.

## CONCLUSION

This Court should affirm the judgment of the district court.


Respectfully submitted,

J. Combs, *et al.*

By: _____ */s/ Michael Dingman_ _____
        Michael Dingman
        *Assistant Solicitor General*

JASON S. MIYARES
  *Attorney General*

TIMOTHY E. DAVIS
  *Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

November 25, 2024

ERIKA L. MALEY
  *Solicitor General*

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

BRENDAN CHESTNUT
  *Deputy Solicitor General*

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,152 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Michael Dingman*
_____
Michael Dingman

## CERTIFICATE OF SERVICE

I certify that on November 25, 2024, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Michael Dingman*
Michael Dingman