In the United States Court of Appeals
for the Fourth Circuit

Garfield William Holley,
Appellant

v.

Mr. J. Combs, et al.,
Appellees

On Appeal from the United States District Court
for the Western District of Virginia
The Honorable Elizabeth K. Dillon, Chief District Judge

**Appellant's Reply Brief**

Thomas V. Burch
Zach D. Poppe, Student Counsel
Taylor L. Stablein, Student Counsel
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

# Table of Contents

Table of Authorities .................................................................................. ii

Argument.................................................................................................. 1

    I.    Mr. Holley pled a pattern of misconduct that satisfies the imminent danger exception to the three-strikes rule .................................................... 2

    II.   Mr. Holley pled ongoing physical injuries that satisfy the imminent danger exception to the three-strikes rule .................................................... 8

    III.   The allegations in Mr. Holley's motion to alter the judgment are a continuation of his prior arguments and show why the district court committed clear error in denying him *in forma pauperis* status .................. 13

Conclusion .............................................................................................. 18

Request for Oral Argument ..................................................................... 18

Certificate of Compliance

Certificate of Service

# Table of Authorities

**Cases**

*Abdul-Akbar v. McKelvie,*
   239 F.3d 307 (3d Cir. 2001)............................................................ 7

*Andrews v. Cervantes,*
   493 F.3d 1047 (9th Cir. 2007) ........................................................ 4

*Asemani v. USCIS,*
   797 F.3d 1069 (D.C. Cir. 2015) ...................................................... 8

*Banister v. Davis,*
   590 U.S. 504 (2020) ...................................................................... 13

*Hall v. United States,*
   44 F.4th 222 (4th Cir. 2022) ................................... 1, 3-5, 9-11, 16-17

*Ibrahim v. District of Columbia,*
   463 F.3d 3 (D.C. Cir. 2006) ........................................................ 11

*Johnson v. Warner,*
   200 F. App'x 270 (4th Cir. 2006)........................................ 1, 5-6, 9

*Martin v. Shelton,*
   319 F.3d 1048 (8th Cir. 2003) .....................................................7-8

*Mitchell v. Fed. Bureau of Prisons,*
   587 F.3d 415 (D.C. Cir. 2009) ...................................................... 8

*Newkirk v. Kiser,*
   812 F. App'x 159 (4th Cir. 2020)................................................4-7

*Sanders v. Melvin,*
   873 F. 3d 957 (7th Cir. 2017) ................................................. 11-12

*White v. Colorado,*
    157 F.3d 1226 (10th Cir. 1998) ...................................................................... 16

## Argument

To avoid having his complaint dismissed under the three-strikes provision of the PLRA, Mr. Holley had to allege specific facts showing either (1) ongoing serious physical injury, or (2) a pattern of misconduct evidencing the likelihood of imminent serious physical injury. *Hall v. United States*, 44 F.4th 218, 224 (4th Cir. 2022) (citing *Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006)). The district court found that he did not satisfy this standard, and now, in their response brief, the defendants agree, making four basic arguments. First, they argue that Mr. Holley made "conclusory allegations about a pattern of misconduct" that are "entirely unconnected to the incidents alleged in the complaint." Resp. Br. at 21, 23–32. Second, they argue that "ongoing effects" from prior injuries are not enough to satisfy the imminent danger exception, and that, instead, the exception "requires a risk of future serious physical injuries." *Id.* at 21, 32–38. Third, they argue that Mr. Holley did not "allege facts showing that officials are failing to treat him for the alleged ongoing issues, or that such lack of treatment will lead to serious physical injury in the future." *Id.* at 21, 32–38. Finally, they argue that the additional allegations in Mr. Holley's motion to alter the judgment do "not meet the high burden that such motions face." *Id.* at 22, 38–45. Because those arguments are inconsistent with both Mr. Holley's allegations and this Court's precedent, we respectfully ask this Court to reject them, find that Mr.

Holley satisfied the imminent danger exception, and remand his case to the district court.

## I.  Mr. Holley pled a pattern of misconduct that satisfies the imminent danger exception to the three-strikes rule.

We argued in our opening brief that Mr. Holley satisfied the imminent danger exception to the three-strikes rule by alleging a pattern of misconduct that showed a likelihood of imminent serious physical injury at the time he filed his complaint. The defendants disagree in their response, arguing that Mr. Holley made only "conclusory allegations about a pattern of misconduct" that are "entirely unconnected to the incidents alleged in the complaint." Resp. Br. at 21, 23–32 (concluding that any contrary finding would create a circuit split with the Third, Eighth, and D.C. Circuits). This Court should side with Mr. Holley for four reasons.

First, Mr. Holley's allegations were not "conclusory." He alleged, for example, that because he filed a grievance related to delayed dental care, the defendants transported him to the dentist in a cage in the back of a truck for six hours in thirty-five degree weather with no heat or ability to access his rescue inhaler, resulting in him contracting pneumonia. (JA 8, JA 25–27, JA 34–36). Then he alleged that while he was unconscious for forty-eight hours because of that pneumonia, the defendants left him handcuffed so tightly that it resulted in thirteen-inch gashes on his hands and wrists, permanently scarring him and causing ongoing hand and wrist pain. (JA 9–10,

JA 27–28, JA 36). After that, he alleged that this type of mistreatment is both common and continuing at Wallens Ridge State Prison. In particular, when responding to the defendants' motion to dismiss, he alleged that Assistant Warden Combs was "aware of over 20 years of credible inmate complaints, attorney complaints and famil[y] complaints about WRSP's correctional officers excessive use of force on inmates *as a means of punishment* and not for legitimate reasons." (JA 59, JA 73–74) (emphasis added) (listing examples of that mistreatment). He even attached an article from the Richmond Times Dispatch that was published after he filed his complaint that detailed multiple abuse claims in 2020 from similarly situated inmates at WRSP. (JA 62–63) (quoting one of those inmates as saying "I just want this place to do what they're supposed to do and stop beating on people. I'm not the only person that this has happened to. It happens to a lot of people. This place is terrible."). In short, he alleged an ongoing pattern of mistreatment against both him and other similar inmates, which is sufficient to satisfy the imminent danger exception to the three-strikes rule. *Hall*, 44 F.4th at 224–25 ("We have also clarified that if there is a pattern of past conduct that places an incarcerated person in imminent danger of harm, and which is ongoing, then the litigant meets the exception.").

Second, the defendants are wrong in saying that Mr. Holley's pattern-of-misconduct allegations are "entirely unconnected to the incidents alleged in the complaint."

Resp. Br. at 21, 23–32. For starters, the defendants seem to base this argument on the idea that all of the "incidents" in the pattern of misconduct have to involve the plaintiff himself. *See, e.g.,* Resp. Br. at 23, 28–29 (faulting Mr. Holley for making "conclusory assertions that Wallens Ridge officials engage in misconduct on a widespread basis" and concluding that he failed to show that he, "personally," faced imminent danger). But this Court recognized in *Hall* that abuse directed at similarly situated inmates is part of the pattern-of-misconduct analysis. *See, e.g., Hall,* 44 F.4th at 225 ("[A] prisoner who alleges that prison officials continue with a practice that has injured him *or others similarly situated* in the past will satisfy the 'ongoing danger' standard and meet the imminence prong of the three-strikes exception.") (emphasis added) (quoting *Newkirk v. Kiser,* 812 F. App'x 159, 159–60 (4th Cir. 2020) and *Andrews v. Cervantes,* 493 F.3d 1047, 1056–57 (9th Cir. 2007)). That matters here because the "incidents" that Mr. Holley alleged in his complaint share a common trait with the incidents of abuse that he alleged against other inmates. Specifically, all of those incidents illustrate how the defendants treat inmates who are perceived to be disruptive. *See, e.g.,* (JA 8) (explaining that the defendants made Mr. Holley ride in a cage in the back of a truck on the way to the dentist in retaliation for him filing a grievance over delayed dental care); (JA 35) (explaining that the defendants wanted to "humiliate" Mr. Holley); (JA 10) (alleging that while Mr. Holley was handcuffed in the hospital with pneumonia,

he overheard an officer laugh and state, "There lays old Holley, always writing up shit, bitching about no coffee and no juice; good riddance; Holley dying cuffed-up non-stop your black-ass to Hell."); (JA 62–63) (providing examples of WRSP officials assaulting inmates who had written grievances, practiced their Muslim religion, caused a disturbance in their pod, or caused a disturbance at another facility). In other words, all of the incidents that Mr. Holley described—whether involving him or others—are part of the same pattern of misconduct against inmates that the defendants find troublesome. That being the case, they all should be considered in the pattern-of-misconduct analysis. *See Hall*, 44 F.4th at 225; *Newkirk*, 812 F. App'x at 159–60.

Third, and relatedly, Mr. Holley's pattern-of-misconduct allegations are no different than the allegations in *Newkirk* and *Johnson*—two cases where this Court found that the inmates satisfied the imminent danger exception. In *Newkirk*, for example, the plaintiff "described one incident in which he was allegedly subjected to excessive force" and he "claimed that prison staff members regularly assault inmates without cause and threaten inmates who complain." *Newkirk*, 812 F. App'x at 160; *compare* (JA 8–10, JA 23–28, JA 34–36, JA 59, JA 62–63, JA 73–74) (describing two incidents of "cruel and unusual punishment" involving Mr. Holley, alleging that similar misconduct has been taking place at WRSP for "over 20 years" against him and other inmates who are perceived to be disruptive, and providing multiple examples of misconduct

that occurred within the year preceding his complaint). Similarly, in *Johnson*, the plaintiff "described in detail a number of alleged assaults [against him] by prison guards" who had "threatened him" with bodily harm, which caused him to "live[] in an atmosphere of constant fear in which he never knows when the next violent assault may occur." *Johnson*, 200 F. App'x at 271–72; *compare* (JA 23–28, JA 60) (describing how the defendants exhibited their "heinous dislike" for 65-year-old asthmatic Mr. Holley by transporting him in thirty-five degree weather in the back of a truck, chaining him so tightly in leg irons, handcuffs, and an electric shock harness that he could not access his rescue inhaler, removing him from the truck with "weapons drawn," and later, while he was unconscious from the resulting pneumonia, chaining his hands so tightly that his hands swelled to "3 times their normal size," all of which has made him "suffer repeated sleepless nights, plagued by repeated night-terrors of officers chaining [him] down onto wooden planks absolutely for no reason at all"). In short, both here and in *Newkirk* and *Johnson*, the plaintiffs each alleged "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Johnson*, 200 F. App'x at 272; *Newkirk*, 812 F. App'x at 160.[1]

---

[1] The defendants distinguish *Newkirk* by saying that the "alleged incident of excessive force" "took place a mere eight days before the plaintiff filed the complaint" and that the plaintiff claimed "a second incident of excessive force weeks after." Resp. Br. at 28. But what matters on the defendants' first point is that both the plaintiff in *Newkirk*

Finally, the defendants say that ruling in Mr. Holley's favor will create a circuit split with the Third, Eighth, and D.C. Circuits. Resp. Br. at 25–26. We disagree. Those circuits apply the same imminent danger standard that this Court applies. They simply found that the standard was not satisfied in those cases because the plaintiffs either: did not rely on an ongoing-danger theory; made "generalized" allegations about defendants' "plots" to harm or kill the plaintiffs; made "generic" allegations about potentially being harmed by other unnamed inmates because of the "dangerous" nature of their facilities; or did not allege any pattern of abuse directed at other inmates. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 n.1 (3d Cir. 2001) ("Importantly, at no point in the present litigation did Appellant seek to rely on an ongoing danger theory, even through the able counsel appointed by this court for purposes of this appeal."); *id.* (faulting the plaintiff for making "generalized" allegations about a "plot" to harm or kill him); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (mentioning no allegations about patterns of abuse directed at other inmates, explaining that the plaintiff's amended complaint "made no allegation of ongoing danger," and pointing out

---

and Mr. Holley alleged a pattern of misconduct that was ongoing at the time of their complaints. The fact that the misconduct involving Mr. Holley was a little earlier in the pattern does not change the fact that a pattern existed. And on the defendants' second point, this Court did not consider the "second incident" of excessive force in *Newkirk*. It instead found that the plaintiff alleged a pattern of misconduct based on "one incident in which he was allegedly subjected to excessive force" along with an allegation that such force was common at his facility. *Newkirk*, 812 F. App'x at 160.

evidence that the plaintiff both failed to bring his coat on the day he was "forced" to work in the cold and refused to wait for the defendants to bring a coat to him, choosing to quit work instead); *Asemani v. USCIS*, 797 F.3d 1069, 1076 (D.C. Cir. 2015) (faulting the plaintiff for alleging a "generic threat of violence" based on the "maximum security nature of other inmates," and pointing out that the plaintiff was in protective custody at the time he filed his complaint); *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 421 (D.C. Cir. 2009) (faulting the plaintiff for making "vague and unspecific" allegations and explaining that "neither the complaint nor the IFP motion alleges any ongoing threat").

## II. Mr. Holley pled ongoing physical injuries that satisfy the imminent danger exception to the three-strikes rule.

We also argued in our opening brief that Mr. Holley pled two ongoing injuries that satisfied the imminent danger exception to the three-strikes rule: his worsening chronic asthma and the pain and permanent damage to his hands and wrists. The defendants disagree in their response, making two arguments. First, they argue that the imminent danger exception requires "a risk of future serious physical injuries," not "ongoing effects" from past harms. Resp. Br. at 20–21, 32–38. Second, they argue that Mr. Holley "does not allege facts showing that officials are failing to treat him for the alleged ongoing issues, or that such lack of treatment will lead to serious physical injury in the future." Resp. Br. at 21, 32–38 (maintaining that allowing Mr. Holley to

proceed under the ongoing injury prong of the imminent danger exception would create a circuit split with the Seventh Circuit). This Court should reject the defendants' arguments for four reasons.

First, the defendants' "ongoing effects" argument is inconsistent with *Hall*, which stated that "ongoing serious physical injury" is enough to satisfy the imminent danger exception. *Hall*, 44 F.4th at 224 (quoting *Johnson*, 200 F. App'x at 272). Put differently, Mr. Holley did not have to show a "risk of future serious injuries" as the defendants argue; instead, it was enough for Mr. Holley to allege that the defendants' failure to treat him resulted in "serious physical injuries, or severe bodily harm." *Hall*, 44 F.4th at 227 (stating that "if an incarcerated person sufficiently alleges that he or she has been continually denied necessary medical care which has worsened their chronic conditions and, as a result, they are experiencing serious physical injuries, or severe bodily harm, then a district court need not wait until the petitioner is facing immediate life-threatening injuries to allow him or her to proceed IFP").

Second, the defendants' argument that Mr. Holley "does not allege facts showing that officials are failing to treat him for the alleged ongoing issues, or that such lack of treatment will lead to serious physical injury in the future" is inconsistent with Mr. Holley's allegations. Resp. Br. at 21. Mr. Holley alleged, for example, that the defendants failed to provide nerve treatment and physical therapy for his hands and

wrists, and that this was causing severe bodily harm. (JA 12, JA 65, JA 71) (alleging that his hand and wrist pain is "ongoing" and that he needs a "nerve specialist and real physical therapist to restore complete abilities to hands"); (JA 31, JA 60, JA 65) (describing the "non-stop" hand and wrist pain as "fiery" and "electric"); *see also* Op. Br. at 25–27 (explaining how this injury is both ongoing and serious). Likewise, Mr. Holley alleged that his chronic asthma worsened as a result of the defendants causing him to contract pneumonia and then failing to adequately treat him. (JA 8, JA 25–27, JA 34–36) (alleging that the defendants transported him in a cage for six hours with no heat, ventilation, or access to his rescue inhaler and that their subsequent failure to diagnose and treat his pneumonia caused "life-threatening" "asthmatic wheezing" and severe bronchospasms); (JA 31, 39) (alleging that in December 2019, one year after the cage transport, he was suffering "acute shortness of breath" and a "wracking cough every 12-14 minutes"). He also alleged that he had "no confidence in diagnoses *which amount to nothing at all*," indicating that the treatment the defendants provided was insufficient. (JA 31, 39) (emphasis added). Those allegations are sufficient to satisfy the imminent danger exception. *See Hall*, 44 F.4th at 227–29 (recognizing that a failure to provide adequate medical treatment could constitute a denial or delay of medical care sufficient to meet the imminent danger exception when coupled with worsening medical conditions that would result in serious physical injury).

Third, and in the same vein, Mr. Holley alleged that the defendants' failure to treat has led to "*further*" or "additional" injury. *See* Resp. Br. at 34 (arguing that "delay or denial of treatment only suffices for the 'imminent danger' requirement if it poses a danger of serious injury 'additional' and '*further*' to the existing chronic condition" (quoting *Ibrahim v. District of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006))). Specifically, Mr. Holley alleged that the defendants' failure to treat worsened his chronic asthma and caused a significant loss in hand function. (JA 9, JA 12, JA 27, JA 31, JA 36, JA 39, JA 60). For example, he alleged that when the defendants delayed his treatment for pneumonia, he suffered "life-threatening breathing, asthmatic wheezing from worse-to-worse." (JA 9, JA 27, JA 36). Likewise, he alleged that he was experiencing "ongoing" "numbness," "electric" pains, "throbbing," and "permanent disfigurement" in his hands. (JA 9, JA 12, JA 27–29, JA 31, JA 36, JA 39, JA 65, JA 71). So, like in *Hall* and *Ibrahim*, he alleged that "'[w]ithout adequate treatment, [he] will continue to suffer additional harm . . . sufficient to constitute imminent danger.'" *Hall*, 44 F.4th at 231 (quoting *Ibrahim*, 463 F.3d at 7).

Finally, adopting Mr. Holley's arguments would not create a circuit split with the Seventh Circuit. *See* Resp. Br. at 35 (arguing that "[a]dopting Mr. Holley's argument would conflict with the Seventh Circuit's holding in *Sanders*") (citing *Sanders v. Melvin*, 873 F.3d 957 (7th Cir. 2017)). In *Sanders*, the plaintiff alleged that "the

isolation, heat, and restricted air flow in solitary confinement harm him by aggravating . . . his asthma." 873 F.3d at 959; *see also id.* at 960 (alleging a "struggle to breathe"). The court held that the plaintiff's allegations regarding his asthma did not meet the imminent danger exception because the plaintiff "has not offered any reason to think that serious physical injury from asthma is 'imminent.'" *Id.* at 960. And the court stated that "a 'struggle to breathe', which [plaintiff] alleges, is a normal incident of asthma rather than a 'serious' incremental harm." *Id.* But Mr. Holley's allegations go far beyond a "struggle to breath" or conditions "aggravating" his asthma; instead, Mr. Holley alleged that the defendants drove him in the back of a truck for six hours in thirty-five degree weather, causing serious, life-threatening injuries. (JA 8–9, JA 27, JA 36) (explaining that defendants' actions caused him to contract pneumonia and that, following their delayed care for that pneumonia, he was "nearest death, laid stretched upon his back" and was "suffering severest bronco-spasms"); *see also* (JA 27, JA 36) (stating that Mr. Holley's "asthmatic wheezing" was "life-threatening"); (JA 31, JA 39) (describing, in a December 2019 grievance, an incident in which Mr. Holley "awoke suffering acute shortness of breath" and a "wracking cough every 12-14 minutes"). Thus, Mr. Holley alleged more serious injuries than a "struggle to breathe" or conditions "aggravating" his asthma, and a finding of imminent danger here would not conflict with the Seventh Circuit's holding in *Sanders.*

**III.** **The allegations in Mr. Holley's motion to alter the judgment are a continuation of his prior arguments and show why the district court committed clear error in denying him *in forma pauperis* status.**

The defendants argue that Mr. Holley's motion to alter the judgment improperly raises new arguments that should not be considered, while failing to highlight a clear error of law. Resp. Br. at 38–45 (concluding that Mr. Holley failed to show an abuse of discretion by the district court). Not so. As a preliminary matter, the arguments in this motion are not new, but rather a continuation of his earlier challenges. And, in these arguments, Mr. Holley describes more than just the ongoing effects of his 2018 hospitalization. He outlines the development of worsening physical and psychiatric health concerns with a nexus to the events described in the complaint. (JA 80–86). Thus, while this Court should reject, after *de novo review*, the district court's original order denying *in forma pauperis* status, it can also reject the district court's denial of the motion to alter the judgment because the defendants' arguments regarding the abuse of discretion standard all fall short.

First, the defendants argue that this Court should not consider Mr. Holley's assertions in the motion to alter the judgment because he "improperly relied on new arguments and new allegations" that he could have raised before the district court denied his request for *in forma pauperis* status. Resp. Br. at 39 (citing *Banister v. Davis*, 590 U.S. 504, 508 (2020)). But this misconstrues the nature of his allegations, as he

does not introduce new arguments but rather builds on arguments already presented *before* the district court's decision. For example, the "new" grievances noted by the defendants include a list of grievances related to ongoing respiratory problems, physical pains, and anxiety traceable to the incidents in the complaint. Resp. Br. at 39 (pointing to grievances involving events in 2019 and 2020); *see also* (JA 81–82) (detailing the grievances challenged by the defendants). Mr. Holley stated in his motion to alter the judgment that the problems highlighted in these grievances were a "direct immediate consequence[]" of the mistreatment he endured in October and November 2018, and he highlighted the repeated denial of these grievances along with delays in medical care for the problems they raised. (JA 80–86) (detailing grievances he filed all the way up to the date when he finally filed his complaint and additional grievances filed after that date). In other words, he introduced the grievances to show that the problems were ongoing, that they were not being adequately treated, and that it was negatively impacting his health—all the same things he said in his complaint, in his response to the defendants' motion to dismiss, and in his objections to the district court's November 2020 memorandum opinion. *See* (JA 9–10, JA 27–28) (complaining of ongoing pain and suffering, prolonged and injurious effects of mistreatment, and delayed treatment for near-death asthmatic wheezing); (JA 37) (alleging ongoing physical and mental suffering); (JA 57, JA 60) (highlighting undue delays and denials of

medical care, sleeping problems, night terrors, and "electric" pains); (JA 71) (detailing ongoing pain and numbness and the prison's failure to provide any gauze or bandages for his wounds); (JA 80–86) (citing respiratory problems, hand pains, extreme paranoia, trouble sleeping, and shock traceable to the mistreatment in 2018). At bottom, these are not new arguments, but a continuation of those already presented that illustrate why the district court clearly erred in denying him *in forma pauperis* status.

Second, the defendants claim that Mr. Holley's motion to alter the judgment does not show a "clear error of law," but rather "establish[es] that [he] has undergone extensive treatment for his breathing issues and that medical professionals treat him when he requests care." Resp. Br. at 22. But instead of admitting that he underwent "extensive treatment" and received care "when he request[ed]," Mr. Holley was careful to explain that this care was inadequate and caused his medical conditions to worsen. *See, e.g.*, (JA 81–83) (claiming the treatment amounted to "doing nothing at all" and listing several examples where his treatments were delayed). More specifically, Mr. Holley highlighted significant delays in treatment, further alleging that, when prison physicians did see him, the treatments did not help his conditions. (JA 82). For example, he did not merely disagree with prison staff or physicians about his precise medical needs but rather showed a pattern of the officers refusing to meet his needs—even when he was dealing with a time-sensitive and life-threatening condition like an

inability to properly breathe. *See* (JA 82) (alleging, for instance, that he had to wait eleven days for breathing treatment); (JA 83) (alleging an eight-day delay in care after he reported a "life-threatening breathing issue"); (JA 81) (claiming he ran out of his prescription for respiratory issues, leading to additional health complications); *see also Hall*, 44 F.4th at 227 (factoring *delayed* or denied medical treatment into the imminent danger analysis).

Third, the defendants cite a Tenth Circuit decision to argue that, because Mr. Holley admitted to having been seen by the prison infirmary on multiple occasions, he failed to raise a credible allegation of imminent danger. Resp. Br. at 40–41 (citing *White v. Colorado*, 157 F.3d 1226, 1231–32 (10th Cir. 1998)). But there is a distinction between *seeing* a prison physician and actually receiving proper care. *See Hall*, 44 F.4th at 221, 227–28 (remanding for reconsideration of the imminent danger exception where plaintiff admitted to seeing a doctor but alleged that he still did not receive the proper standard of care). Here, Mr. Holley stated that he lost confidence in diagnoses, amounting to the treatments "doing nothing at all." (JA 82). And he highlighted adverse consequences stemming from delays and improper treatment—namely, the worsening of his physical ailments coupled with a deteriorating mental condition. He also described the escalation of psychiatric concerns stemming from the trauma of the initial incident, even noting substantial physical symptoms that developed. *See, e.g.*, (JA

82) (citing extreme paranoia, causing entire body trembles and feelings of shock attributable to the November 2018 trauma to his hands and wrists); (JA 80–81) (citing suffocating and wheezing that developed in March 2019, months after the initial incident). In short, being seen by the prison infirmary does not negate his imminent danger claim when he alleged that the treatment it provided was inadequate. *Hall*, 44 F.4th at 221, 227–28; *see also* (JA 80–81) ("The damage to G. Holley's lungs is ongoing); (JA 84) (requesting medical attention to "work through ongoing mental and physical disorders").

Finally, Mr. Holley alleged in his motion to alter the judgment that his medical problems were aggravated by the looming threat of harm if he asked for further treatment. When he approached an official for medical help in 2021, for example, the official responded, "if you ask me again about your damn breathing treatment, you'll get your taste of WRSP's beat down for your damn trouble." (JA 83). Put differently, Mr. Holley provided further evidence that WRSP officials retaliate against inmates who are perceived as disruptive. Viewing that evidence combined with the evidence of insufficient and delayed care, the district court abused its discretion in denying the motion to alter the judgment, and this Court should reverse.

## Conclusion

Mr. Holley sufficiently alleged both ongoing physical injury and a pattern of misconduct evidencing a likelihood of serious physical injury. Because of that, we respectfully ask this Court to reverse the order that denied him *in forma pauperis* status.

## Request for Oral Argument

The defendants allege that reversing the district court would create two circuit splits. We respectfully disagree. Mr. Holley's imminent danger allegations are substantial and specific, and denying him *in forma pauperis* status would create a practically unattainable standard for *pro se* incarcerated plaintiffs. Because of that, and because the defendants have raised the specter of impending circuit splits, we respectfully request oral argument.

Respectfully submitted,

/s/ Thomas Burch
Thomas V. Burch
Zach D. Poppe, Student Counsel
Taylor L. Stablein, Student Counsel
Appellate Litigation Clinic
Univ. of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

## Certificate of Compliance

This brief complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) because it contains 4,477 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Goudy Old Style font.

/s/ Thomas Burch
Thomas Burch
Zach D. Poppe, Student Counsel
Taylor L. Stablein, Student Counsel
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

**Certificate of Service**

We certify that this Reply Brief was served on all parties registered with the Court's ECF system on December 20, 2024. We also certify that it was served that same day by United States mail, postage prepaid, on:

Garfield William Holley
Prisoner Number 1062808
Sussex I State Prison
24414 Musselwhite Drive
Waverly, VA 23891

/s/ Thomas Burch
Thomas Burch
Zach D. Poppe, Student Counsel
Taylor L. Stablein, Student Counsel
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236